# CRIMINAL CASES.

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### HENDERSON v. COMMONWEALTH.

#### JANUARY 25, 1900.

1. BURGLARY—*Housebreaking—Possession of Goods Recently Stolen—Presumption.*—The presumption of burglary or housebreaking does not arise from the mere possession of goods recently theretofore stolen from a house that was broken and entered for that purpose. Such possession, however, is a most material circumstance to be considered in connection with other inculpatory circumstances.

2. HOUSEBREAKING—*Indictment—Ownership of House—Evidence.*—Upon an indictment charging the prisoner with breaking and entering the storehouse of A and B, composing the firm of A B, proof of the breaking and entering the storehouse of A B is sufficient to sustain a verdict of guilty, without showing the names of the individuals who composed the firm, or other particulars as to the ownership of the storehouse.

3. CRIMINAL PROCEDURE—*Verdict—Certainty.*—A verdict in a criminal case is always to be read in connection with the indictment, and if, upon such reading, the meaning of the verdict is certain that is sufficient.

Error to a judgment of the Circuit Court of Rockingham county, rendered November 1, 1899, affirming the judgment of the County Court of said county on a prosecution of the plaintiff in error for housebreaking.

*Affirmed.*

The plaintiff in error was indicted for breaking and entering, in the nighttime, "a certain storehouse, the property of P. F. Spitzer and G. W. Hess, partners doing business under the firm name of Spitzer & Hess," with intent to commit larceny. The evidence of P. F. Spitzer, a witness for the Commonwealth, is: "I am engaged in the stationery business, in the firm of Spitzer & Hess, on south Main street, in the town of Harrison-burg, Va. My place of business was broken open on the night of the 10th of March; the window light in the transom over the door in the rear of the building was cut out, and entrance was made by crawling through the sash, from which the light was taken." This is all the evidence with reference to the owner-ship of the building. It was shown that Spitzer & Hess lost about $75 in money, and several checks; that there were about six five-dollar bills, three tens, and one two-dollar bill, and about two hundred pennies taken; that plaintiff in error was seen near the storehouse about twelve o'clock that night; that he under-took to "beat his way" to Staunton on a freight train next morning, but was put off; that he stated to the train men that he was from Winchester; that the officers sent to arrest him did not find him on their way to Staunton, but, returning by a freight train, saw him on the side of the track, and when the train was stopped he ran, and was pursued and arrested; that when arrested he had on his person, amongst other things, a piece of candle which had been lighted, a pocket-knife, "with the point broken off the long blade," and a pocket-book contain-ing a five-dollar bill and some silver, and that there were some slight scratches or punctures on several of his fingers. There was found "on a ledge above the door, just below the broken glass," the point of a knife blade which had the appearance of having been recently broken off. A witness for the Common-wealth testified that the knife blade had been recently ground; that, upon examination under a microscope, "the grain on the broken point corresponded to the grain of the metal in the knife

blade. The bevel on the back of the knife fits exactly to the bevel here on this broken point found by me. This point is the point of this knife." He further stated: " There is only one knife that this point can fit  *  *  *. If you were to break twenty thousand knife points no two would be alike." While in jail, the plaintiff in error attempted, along with other prisoners, to effect his escape. It further appeared that the plaintiff in error gave to an officer voluntarily the following account of the money he had in his possession when arrested:

" He said he met Turner Green in front of Taliaferro's store on Thursday night (the night the store was broken open), at eleven o'clock, and Turner said, ' I made a good haul to-night,' and the prisoner said, ' Whereabouts?' and Turner Green said, 'At Spitzer & Hess' store.' The prisoner said, ' How much did you get?' Turner Green said, 'About $80.' Jim said, ' If you don't give me some I'll tell on you.' Jim said he gave him $7.50. That was all he said on the subject."

After the evidence was all in, the plaintiff in error asked the court to instruct the jury as follows:

"(1.) The court instructs the jury that the prisoner is presumed to be innocent until he is proven to be guilty, beyond every reasonable doubt, by the Commonwealth, and that the burden of proving the guilt of the accused rests upon the Commonwealth; and that to warrant a conviction of any offence, every fact necessary to establish his guilt, must be proven beyond every reasonable doubt by the Commonwealth, and especially is this true where, as in this case, a conviction is sought upon circumstantial evidence alone, which is always to be acted on with the utmost caution. *Prather's Case*, 85 Va. 125-6.

"(2.) The court further instructs the jury that circumstances of suspicion, no matter how grave or strong, are not proof or evidence of guilt, and that the accused must be found not guilty unless the fact of his guilt is proven beyond every reasonable

doubt to the actual exclusion of every reasonable hypothesis of innocence.

"(3.) The court further instructs the jury that any fact sought to be proven by the prisoner needs only to be established by proof that would be satisfactory to establish such a fact in a civil trial, and the prisoner is not bound to prove the same beyond a reasonable doubt, but only by a preponderance of evidence.

"(4.) The court further instructs the jury that the possession of money, by the prisoner, when arrested, cannot be considered by the jury in this case as proof, or tending to prove, that he stole the same from the firm of Spitzer & Hess on the night of March 10, 1899.

"(5.) The court further instructs the jury that in the absence of proof, beyond every reasonable doubt, by the Commonwealth that the money found in the possession of the prisoner, when arrested, was the same money stolen from the firm of Spitzer & Hess, on the 10th of March, 1899, such possession is no proof against the accused that he committed the crime charged in the indictment.

"(6.) The court further instructs the jury that although they may believe, from the evidence, that the money found in the possession of the prisoner is the same money stolen from the storeroom of Spitzer & Hess on March 10, 1899, yet such possession alone, is not to be considered as any proof, or tending to prove the accused guilty of the offence charged in the indictment."

" To the granting of the third, fourth and sixth of which instructions the Commonwealth's attorney objected, and the court sustained said objection, and refused to give said third, fourth and sixth instructions, or any of them, but gave the first instruction prayed for by the prisoner; and the court then, upon its own motion, refused to give the second and fifth instructions prayed for by the prisoner, and in lieu of said second, third,

fourth, fifth and sixth instructions prayed for by the prisoner, upon its own motion, gave the following instructions:

*"Instruction Given by the Court in Lieu of Second Instruction Prayed for by the Prisoner.*

" The court further instructs the jury that circumstances of suspicion, no matter how grave or strong, are not proof of guilt, and that the accused must be found not guilty unless the fact of his guilt is proven beyond every reasonable doubt to the actual exclusion of every reasonable hypothesis of his innocence consistent with the fact proven.

*"Instruction Given by the Court in Lieu of Instruction No. 3, Offered by Prisoner, and Not Given.*

" The court further instructs the jury that any fact or facts sufficient to produce a reasonable doubt as to the guilt of the prisoner need only to be established by proof that would be satisfactory to establish such fact or facts in a civil trial, and the prisoner is not bound to prove the same beyond a reasonable doubt, but only by a preponderance of evidence.

*"Instruction Given by the Court in Lieu of Instructions Nos. 4, 5 and 6, Offered by Prisoner, and Not Given.*

" The court further instructs the jury that the possession of money by the prisoner, when arrested, cannot be considered as sufficient proof that he stole the same from the firm of Spitzer & Hess, or that he committed the crime charged in the indictment, but if the jury believe from the evidence that the prisoner did have money on his person when arrested, that is a fact which the jury have a right to consider in connection with all the other evidence adduced before them, and it is for the jury, upon consideration of the whole of the evidence introduced by the Commonwealth and for the prisoner, to say whether or not the

prisoner is guilty of the crime with which he is charged beyond any reasonable doubt.

"To which action of the court in sustaining the objection of the Commonwealth's attorney to the third, fourth and sixth instructions, and refusing to give the same or any of them, and to the action of the court in refusing, upon its own motion, to give the second and fifth instruction or either of them, as prayed for by the prisoner, and to the court's action, upon its own motion, in giving the aforesaid instructions in lieu of the second, third, fourth, fifth and sixth instructions prayed for by the prisoner, the prisoner, by counsel, excepts, and prays that this, his third bill of exception, may be signed, sealed and enrolled, and made part of the record in this cause, which is accordingly done."

*J. B. Stephenson* and *W. Liggett*, for the plaintiff in error.

*Attorney-General A. J. Montague*, for the Commonwealth.

HARRISON, J., delivered the opinion of the court.

The court is of opinion that there was no error in permitting the witnesses Long and Dwyer to answer the questions set forth in the first and second bills of exception. The prisoner was charged with breaking and entering, in the nighttime, a certain storehouse with intent to commit larceny. The proof showed that money was stolen from the store, and the witnesses in question were asked if the prisoner had made any statement about the money found in his possession when he was arrested. In answer to this question, it appeared that the prisoner had stated that the money was stolen from the store the night he was charged with breaking and entering therein, by one Turner Green, who had given him the portion thereof found in his possession, because of his threat to tell unless thus rewarded. The contention is that the possession of goods, recently stolen,

is not evidence of housebreaking, and that the question objected
to could not be asked to prove the burglary; that, before the
Commonwealth could be permitted to rely upon the prisoner's
possession of money as a fact to establish the burglary by him,
she must prove that the money found in his possession was stolen
from the house burglarized or broken into, as charged in the
indictment.

The general rule of the common law with regard to the evi-
dence in cases of larceny, that the possession of goods recently
stolen is *prima facie* evidence of guilt, and throws upon the
accused the burden of accounting for that possession, has never
been held by this court to apply with the same effect in cases of
burglary, and the decided weight of authority is that it does not.
Still, where goods have been obtained by means of a burglary
or housebreaking, the fact of such possession is a most material
circumstance to be considered by the jury in connection with
other inculpatory circumstances. There must be some evidence
of guilty conduct, besides the bare possession of the stolen prop-
erty, before the presumption of burglary or housebreaking is
superadded to that of larceny. *Gravely's Case*, 86 Va. 396;
*Hall's Case*, 3 Gratt. 593.

In the case at bar, several strong inculpatory circumstances
are established connecting the prisoner with the crime charged,
and his admitted possession of part of the stolen money was a
further circumstance, proper to be considered by the jury, in
connection with the other evidence bearing upon the question
of guilt.

We are further of opinion that there was no error in the action
of the court with respect to the instructions which is made the
subject of the third bill of exceptions. Without commenting
in detail upon the instructions, it is sufficient to say that those
asked for by the plaintiff in error, which were rejected, do not
accurately state the law bearing upon the facts which the evi-
dence tended to prove, and all that was proper in them, is sub-

stantially embodied in those given in lieu thereof. The instructions given by the court fairly and fully state the law applicable to the case in all of its bearings, and it is not perceived that the prisoner could have been prejudiced thereby.

We are further of opinion that there was no error in the refusal of the court to set aside the verdict as contrary to the law and the evidence, which ruling is made the subject of the fourth bill of exceptions. Under this head, it is insisted that the indictment charges the accused with breaking and entering the storeroom of P. F. Spitzer and G. W. Hess, partners doing business under the firm name and style of Spitzer & Hess, and that there is no proof in the record of such persons as P. F. Spitzer and G. W. Hess composing a firm called Spitzer & Hess. The whole evidence in the case is directed to inquiring as to the breaking and entering the storehouse of Spitzer & Hess on the night of March 10, 1899, and P. F. Spitzer, a witness for the Commonwealth, says: "I am engaged in the stationery business in the firm of Spitzer & Hess, on south Main street, in the town of Harrisonburg, Va. My said place of business was broken open on the night of the 10th of March," &c. This statement, together with the other evidence in the case, was sufficient to satisfy the ordinary mind that the storehouse charged in the indictment to have been broken into, and no other, was the one shown by the proof to have been broken into; and it is perfectly clear that no prejudice was occasioned the accused by not proving more specifically than was done either the ownership of the store broken into or who composed the firm of Spitzer & Hess.

We are further of opinion that the court did not err in refusing to arrest the judgment as set forth in the fifth bill of exceptions. It is contended, as ground for this motion, that the verdict is not responsive to the indictment; that the prisoner is charged in the indictment with breaking and entering a certain storehouse, the property of P. F. Spitzer and G. W. Hess, partners doing business under the firm name of Spitzer & Hess, with

the intent to commit larceny, whereas the verdict finds the prisoner guilty of breaking and entering the storehouse of Spitzer & Hess, with intent, &c.

The contention is that the parties are not the same; that the verdict should have set forth the individual names of the partners composing the firm of Spitzer & Hess, as done in the indictment. This contention is without merit. A verdict of a jury in a criminal case must always be read in connection with the indictment; and if it be certain, upon reading them together, what is the meaning of the verdict, it is sufficiently certain. *Hoback's Case*, 28 Gratt. 922.

When the verdict in the case at bar is read in connection with the indictment, there is no difficulty in seeing that the jury found the prisoner guilty of breaking and entering the same house that the indictment charges him with having broken and entered.

Upon the whole case, we are of opinion that there is no error in the judgment complained of, and it is affirmed.

*Affirmed.*