Argued November 3, decided December 12, 1911.

## STATE *v.* SETSOR.*

[119 Pac. 346.]

HOMICIDE—MANSLAUGHTER—VERDICT—SUFFICIENCY.

1. A verdict convicting of "involuntary manslaughter" is sufficient as a general verdict convicting of "manslaughter," under Sections 1897-1902, L. O. L., defining manslaughter in its various phases, and Section 1905, imposing the same penalty on them all.

CRIMINAL LAW—VERDICTS—SUFFICIENCY.

2. A verdict should be reasonably construed, and not be held insufficient, unless it is doubtful, or found upon immaterial issues, or manifestly tends to work injustice.

HOMICIDE—"INVOLUNTARY MANSLAUGHTER."

3. "Involuntary," as applied to manslaughter, means that the killing was committed by accident, or without intention to take life.

From Baker: WILLIAM SMITH, Judge.

Statement by MR. JUSTICE BEAN.

The defendant, George Setsor, was indicted for the crime of murder in the first degree for the killing of one

* An error was made in marking a petition for rehearing as filed in this case, and for that reason the opinion rendered herein was not published in 60 Or.                                        Reporter.

John Thomas. He pleaded not guilty, and upon trial by a jury was convicted and sentenced to a term of from one to fifteen years in the penitentiary, with a fine of $1,000, for manslaughter, from which judgment he appeals.

The jury returned a verdict in the following form:

"We the jury, duly impaneled to try the above-entitled cause, find the defendant, George Setsor, guilty of involuntary manslaughter.

[Signed]                    R. R. Palmer, Foreman."

Counsel for defendant moved the court to set aside the verdict and discharge defendant, for the reason that by the return of the verdict and the discharge of the jury thereafter the defendant had been acquitted of the crime of murder in the first degree, murder in the second degree, and manslaughter; and that the jury was not authorized to return a verdict of guilty of involuntary manslaughter, or any other verdict, except not guilty.

The defendant assigns as error the overruling of the motion and the judgment of sentence. He does not ask for a new trial, and, as we understand the brief and oral agreement of counsel for defendant, the only question raised for the determination of this court is whether or not the judgment appealed from is void, and whether the defendant should be discharged, for the reason that the verdict of the jury was not in legal form under the statute of this State, and did not authorize the trial court to pass judgment.          AFFIRMED.

For appellent there was a brief over the names of *Mr. John L. Rand, Mr. A. A. Smith* and *Mr. William H. Packwood, Jr.*, with an oral argument by *Mr. Packwood*.

For the State there was a brief over the names of *Mr. Williams S. Levens,* District Attorney, and *Mr. Claude C. McColloch,* with an oral argument by *Mr. McColloch.*

MR. JUSTICE BEAN delivered the opinion of the court.

Our statute, making provisions for trials in criminal actions as to the verdict, is in effect, as follows:

· "The ·jury may either find a general verdict, or where they are in doubt as to the legal effect of the facts proven, they may find a special verdict." Section 1546, L. O. L. "A general verdict upon a plea of not guilty, is either 'guilty' or 'not guilty' which imports a conviction or acquittal of the crime charged in the indictment." Section 1547, L. O. L. "A special verdict is one by which the jury finds the facts only, leaving the judgment to the court. It must present the conclusions of fact, as established by the evidence." Section 1548, L. O. L. "The special verdict must be reduced to writing by the jury, or in their presence, under the direction of the court, and agreed to by them, before they are discharged. It need not be in any particular form, but is sufficient if it present intelligibly the facts found by the jury." Section 1549, L. O. L. "In all cases, the defendant may be found guilty of any crime, the commission of which is necessarily included in that with which he is charged in the indictment, or of an attempt to commit such crime." Section 1552, L. O. L. "When there is a verdict found, in which it appears to the court that the jury have mistaken the law, the court may explain the reason for that opinion, and direct the jury to reconsider their verdict; but if after such reconsideration they find the same verdict, it must be received." Section 1554, L. O. L.

The section of our statute which is especially applicable in determining whether or not a verdict is in legal form and should be received is as follows:

"If the jury find a verdict which is neither a general nor a special verdict, as defined in Sections 1547 and 1548, the court may, with proper instructions as to the law, direct them to reconsider it; and the verdict cannot be received until it be given in some (form) from which it can be clearly understood what is the intent of the jury, whether to render a general verdict or to find the facts specially, and to leave the judgment. to the court." Section 155, L. O. L.

1. We think it is clear from the verdict rendered in this case that the jury intended to, and did render a general verdict; therefore the only contention is in regard to the description of the crime of which the defendant was found guilty, namely, involuntary manslaughter. Under our statute, the general description of the crime for which defendant was sentenced is manslaughter. If the adjective "involuntary," contained in the verdict, can be given a signification indicating an excuse or justification, or any degree of crime less than manslaughter, or any crime, not included in the indictment, then it would seem that the position taken by the defendant's counsel is correct. On the other hand, if the word "involuntary" does not have any such signification, then the conclusion must be to the contrary.

Sections 1897 to 1902, inclusive, L. O. L., define the crime of manslaughter; Section 1897, L. O. L., as follows:

"If any person shall without malice, express or implied, and without deliberation, upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible, voluntarily kill another such person shall be deemed guilty of manslaughter."

And Section 1898, L. O. L., in these words:

"If any person shall, in the commission of an unlawful act, or a lawful act without due caution or circumspection, involuntarily kill another, such person shall be deemed guilty of manslaughter."

Section 1905, L. O. L., makes the only provision for the punishment of such crime, to-wit:

"Every person convicted of manslaughter shall be punished by imprisonment in the penitentiary not less than one nor more than fifteen years, and by a fine not exceeding $5,000."

Mr. Bishop says:

"The language of the verdict, being that of 'lay people,' need not follow the strict rules of pleading, or

be otherwise technical. Whatever conveys the idea to the common understanding will suffice. And all fair intendments will be made to support it." 1 Bishop's New Criminal Procedure, § 1005.

2. Verdicts should have a reasonable intendment and receive a reasonable construction, and should not be avoided, unless from necessity, originating in doubt as to their import, from immateriality of the issue found, or their manifest tendency to work injustice. 29 Am. & Eng. Enc. of Law (2 ed.) p. 1002. "The test of the sufficiency of a verdict is this: Is it so certain that the court can give judgment upon it?" 29 Am. & Eng. Enc. of Law (2 ed.) p. 1025, citing *Burton* v. *Bondies,* 2 Tex. 204. "The verdict is good if its meaning can be reasonably ascertained, and it can be legally carried into effect; otherwise not." 1 Bishop's New Criminal Procedure, § 642.

We find in the notes to the case of *People* v. *Sullivan,* (N. Y.) 63 L. R. A. 353, on page 404, that it has been held that it is competent and proper for the jury in a prosecution for murder to negative the proposition that the defendant intended to kill the decedent; and a verdict that he did not design or intend the death of the decedent, but he unlawfully killed him while engaged in the commission of some felony, is proper, and constitutes a verdict of murder in the third degree, under Wis. Rev. Stat. c. 164, §§ 1, 2, citing *State* v. *Hammond,* 35 Wis. 315. And a conviction for involuntary manslaughter in the commission of an unlawful act may be had under an indictment charging voluntary manslaughter, citing *Isham* v. *State,* 38 Ala. 213.

Where a verdict was of manslaughter in the second degree, no such degree of manslaughter being specified by the statute, a conviction for manslaughter was sustained; the words relating to the degree being rejected as surplusage. 1 McClain, Criminal Law, § 392.

The verdict should be regarded from the standpoint of the jury's intention, when this can be ascertained; if consistent with legal principles, such effect should be given to their findings as will most nearly conform to their intent, and should be constructed and applied reasonably in the light of all the proceedings. 29 Am. & Eng. Enc. of Law (2 ed.) p. 1023.

What, then, is the meaning of this verdict of the jury, finding the defendant guilty of involuntary manslaughter? Mr. Wharton defines the crime as follows:

"Involuntary manslaughter is where one doing an unlawful act, not felonious or tending to great bodily harm, or doing a lawful act without proper caution or requisite skill, undesignedly kills another. According to the old writers, it is where death results unintentionally, so far as the defendant is concerned, from an unlawful act on his part, not amounting to felony, or from a lawful act negligently performed." Wharton, Homicide, § 6.

3. In Words and Phrases (volume 4, p. 3762) we find: " 'Involuntary,' as applied to manslaughter, means that the killing was committed by accident or without any intention to take life"—citing *United States* v. *Outerbridge* (U. S.) 27 Fed. Cas. 390, 391. We find here several definitions of involuntary manslaughter, taken from various opinions and different statutes. Many, if not all of which are identical with the crime mentioned in Sections 1898 and 1902, L. O. L.

The trial court instructed the jury, as to manslaughter, according to the provisions of Sections 1897 and 1902, L. O. L., and in addition thereto in part as follows:-

"A homicide is manslaughter, even though committed in doing an act lawful in itself, if the defendant was guilty of gross or culpable negligence, and such negligence was the cause of the death."

Mr. Justice MOORE, in discussing a kindred question—the description of a crime in an indictment—in the case

of *State* v. *Ayers,* 49 Or. 67 (88 Pac. 654: 10 L. R. A.
[N. S.] 992: 124 Am. St. Rep. 1036), makes this apt
illustration in regard to defining a crime: "If our
statute, * * had delineated the commission of an offense
and prescribed a punishment as follows: 'If any person
shall purposely, and of deliberate and premeditated
malice, kill another, such person, upon conviction
thereof, shall be punished with death'—the elements of
the common law could undoubtedly be examined to
ascertain the name anciently given to the classification
of such crime"—citing *State* v. *DeWolfe,* 67 Neb. 321
(93 N. W. 746). Applying this rule and illustration
to the case at bar, it would seem proper for the jury in
their verdict to designate a crime by a well-known name
as defined by the text-writers, courts, and statutes;
and if such crime is included in the indictment, as well
as in the statute, then it is clear what the jury intended,
and a judgment upon such verdict would not be void.

In *Spriggs* v. *Commonwealth,* 113 Ky. 724 (68 S. W.
1087), it is shown that the statute of that state subdi-
vided the common-law offense of manslaughter by carv-
ing out of it the statutory crime of voluntary man-
slaughter, for which a different penalty was prescribed
than for involuntary manslaughter; the latter being
dealt with as a common-law offense. The jury, in ren-
dering its verdict, swung the pendulum the other way
from that in the case now under consideration, and
found defendant guilty of manslaughter, without des-
ignating whether voluntary or involuntary, as they
should have done under the law in that state. In that
case, as in this, counsel for defendant asked for his dis-
charge, and did not ask for a new trial. The court,
while clearly of the opinion there was prejudicial error
in the instructions, said: "Technical rules must exist,
and must be applied in cases which come literally and
logically within their scope. . What we decide is that

they will not be applied to cases, not within their purview, and that it is not logical to construe a verdict that a man has been guilty of two offenses into a verdict of not guilty of any offense. There are numerous cases in which the court instructed the jury erroneously, either as to constituent elements of the offense, or as to the punishment to be inflicted. In such cases this court has granted a reversal. It has awarded the defendant a new trial, but it has not discharged him from custody as acquit. * * The judgment in this case was clearly within the jurisdiction of the court upon the offense charged in the indictment. Nor is it necessary for us to consider whether the verdict may be helped or cured by intendment. We think the instruction was erroneous, and, if a reversal had been sought, it would have been granted. But the defendant has carefully precluded himself from that relief, in the effort to obtain total immunity"—and overruled the motion to discharge.

Counsel for defendant cites the case of *State* v. *Stephanus,* 53 Or. 135, 141 (99 Pac. 428), where the jury submitted a verdict for what was assumed to be another offense, which had no legal status, differing from the case at bar, which clearly describes a crime included in the indictment, as well as in the statute. Our statute, it will be seen, defines both voluntary and involuntary manslaughter. The one is no lower degree of crime than the other. They are designated under the one name of manslaughter, and the statute provides the same penalty therefor. While it is unnecessary for the jury to specify in their verdict the particular kind of manslaughter defendant is guilty of, we do not think that such specification renders the verdict uncertain, or the judgment void. The word "involuntary" in the verdict, from a legal standpoint, adds nothing thereto, and detracts nothing from the meaning thereof. It might with propriety be claimed that this verdict verges

Sig. 4

toward the mongrel in type, and we do not approve it as a model. We again mention that we do not consider whether there were any prejudicial errors in the trial of the cause or not, or even consider the instructions, except in so far as to discern if the verdict is in conformity therewith, as the learned counsel do not request a new trial.

There was no error in overruling the motion to discharge the defendant, and the judgment of the lower court should be affirmed, and it is so ordered.

AFFIRMED.