(136 So. 11)

STATE v. RITCHIE.

No. 31187.

May 25, 1931.

Rehearing Denied June 22, 1931.

Hugh M. Wilkinson and Fred W. Oser, both of New Orleans, for appellant.

Percy Saint, Atty. Gen., E. R. Schowalter, Asst. Atty. Gen., and Eugene Stanley, Dist. Atty., and Warren O. Coleman, Asst. Dist. Atty., both of New Orleans, for the State.

ODOM, J.

The defendant was charged in a bill of information with the embezzlement of $350, the property of the Menger-Fisher Motor Company, and on trial was convicted of the crime of obtaining said amount by false pretenses. He was sentenced to serve one year at hard labor, and appealed.

(1) We find in the record four bills of exception. Bill No. 1 was reserved to the ruling of the court permitting the state to introduce testimony showing that the accused had been guilty of other transactions similar to the one for which he was being prosecuted, the purpose of the testimony being to show system and intent.

This testimony was objected to by the defendant on the ground that the state had not proved the corpus delicti; that the testimony offered by the state did not show that defendant had committed the crime of embezzlement, or any other crime or offense denounced by the laws of this state; and that, unless and until some testimony tending to establish defendant's guilt of the particular crime charged was offered, the state could not offer testimony concerning independent and unrelated transactions as proof of intent.

Attached to and brought up with this bill is the testimony upon which the state relied as establishing defendant's guilt. It shows that defendant held some official position which enabled him to become familiar with the method of collecting personal property taxes in the city of New Orleans, and also to gain access to the city tax collector's office and his books. Having such knowledge, and being offered such privileges, he proceeded to engage in a scheme now commonly referred to as a "tax racket" or swindling device, the modus operandi of the system being substantially as follows:

From the assessment rolls, the city tax collector made duplicate statements showing the amount of personal property taxes due by each taxpayer, one of which was sent to the taxpayer and the other placed in a loose-leaf record book, and kept in the office. Upon receipt of the amount due by the taxpayer, the tax collector removed the statement from the record book, stamped it "Paid," and delivered it to the taxpayer. Defendant, after ascertaining the amount of personal property taxes due by various concerns and individuals, would then make propositions to the taxpayers to have their tax bills settled at greatly reduced figures. He did not explain how he would make the settlements, but, in substance, his proposition was that if the taxpayer would pay him a certain amount, always less than the amount due, he would settle the bills and deliver to them evidence of the payment of the taxes. If his proposition was accepted, he would go to the tax collector's office, extract from the records the statements above referred to and deliver them to the taxpayer and receive the amount

agreed upon, which he kept. The tax collector, being left without any record, made no further demand on the taxpayer. Thus the defendant was enriched to the extent of the amount he received, the taxpayer was relieved of a portion of his tax debt, and the city got nothing.

The transaction out of which this prosecution arose was as follows: The Menger-Fisher Motor Company owed taxes for the year 1928 amounting to $733.98, plus interest and costs, making the total amount due on October 26, 1929, the sum of $866.70. The defendant proposed to Mr. Feehan, an employee of the tax debtor, that if the company would pay him $350 he would have the tax debt canceled. Mr. Feehan submitted the proposition to the company, and, upon its acceptance, the company drew its check for $350 made payable to Hugh Ritchie, the defendant, and delivered it to Feehan. Feehan, with the check in hand, met Ritchie in front of the City Hall, where the tax collector has his office. The two went to the bank on which the check was drawn and there Feehan delivered to Ritchie the check, which he cashed, and at the same time, Ritchie delivered to Feehan certain documents which he says he took to be tax receipts. Just what these documents were is not disclosed, as they seem to have been lost. But whatever they were, Feehan understood that they were documents evidencing the settlement of the tax bill due by the tax debtor.

Subsequently, the city had its books checked and audited by experts, who discovered that the Menger-Fisher Motor Company had not paid its taxes for 1928. Whereupon demand was made by the city on the company, and the full amount of the tax was paid by it.

After all these facts were brought out by the prosecuting attorney, he called witnesses to prove that defendant had been guilty of similar practices in other cases. This testimony was offered for the purpose of "showing criminal intent, system and guilty knowledge." The testimony was admitted over defendant's objection, the court giving the jury the following charge relative thereto:

"I charge you gentlemen that the evidence of other crimes similar to that charged is relevant and admissible to show system as well as a particular criminal intent on the part of the accused, but not to prove the offense charged, and you are not to consider it except for the purpose of showing guilty knowledge and intent."

The ground upon which defendant's counsel objected to the introduction of this testimony was that the testimony already introduced by the state did not show that defendant had committed any criminal offense known to law.

Defendant was being prosecuted for the crime of embezzlement. Article 407 of the Code of Criminal Procedure reads as follows:

"Art. 407. Whenever larceny, embezzlement, obtaining by false pretenses or swindling is charged in an indictment, a verdict of guilty of any one of these offenses is responsive; provided, the verdict of guilty shall not be for a greater offense than is within the jurisdiction of the judge or jury."

The testimony offered by the state showed that defendant had obtained the sum of $350 from the Menger-Fisher Motor Company, and the circumstances under which it had been obtained were detailed in full. Whether the defendant obtained this amount with criminal intent, whether his obtention of the money under the circumstances disclosed, constituted embezzlement, larceny, obtaining by false pretenses, or swindling, were matters

for the jury to determine, under proper instructions by the court as to the law applicable. Under the Code, the jury was authorized to convict the defendant of any one of the crimes above mentioned, if, in their opinion, the testimony warranted a verdict. It was not within the province of the trial judge to pass upon the guilt or innocence of the accused. He was of the opinion that the state had introduced sufficient testimony to warrant the reception of evidence showing system and intent. We concur in his conclusion.

██ But it is argued on behalf of the accused that, in order to obtain the $350, he merely promised or pretended that he would do something in the future, which is not a crime, even though the pretenses were false. If the defendant did no more than falsely pretend that he could or would do a certain thing or act at a future time, and by such pretensions obtained the amount, he did not commit the crime of obtaining by false pretenses, as denounced by section 813 of the Revised Statutes, which reads as follows:

"Whoever, by any false pretense, shall obtain, or aid and assist another in obtaining, from any person, money or any property, with intent to defraud him of the same, shall, on conviction, be punished by imprisonment at hard labor or otherwise, not exceeding twelve months."

For one to be guilty of the crime denounced by this section of the statutes, he must obtain money or property from another by falsely pretending or representing that a certain thing, condition, or fact then exists or has existed in the past. The pretenses or representations must necessarily relate to existing or past conditions or events, and not to future promises.

See State v. Antoine, 155 La. 120, 98 So. 861, and the many authorities there cited.

According to the testimony brought up and the per curiam of the trial judge, "the defendant Ritchie handed to the witness, Feehan, a tax bill representing that the 1928 personal property tax of said corporation had been paid." When this tax bill was handed to Feehan, he delivered to Ritchie the check, which was then and there cashed and the money received. The defendant was therefore guilty of pretending or representing that a certain act had been performed, that a certain condition then existed; that is that the company's 1928 taxes were paid, which admittedly was not true.

We find no merit in this bill.

██ (2) Bill No. 2 was reserved to the following charge delivered to the jury by the trial judge: "Whenever larceny, embezzlement, obtaining by false pretenses or swindling is charged in an indictment a verdict of guilty of any one of these offenses is responsive; provided the verdict of guilty shall not be for a greater offense than is within the jurisdiction of the judge or jury."

This charge is in the exact language of article 407 of the Code of Criminal Procedure, and therefore not improper.

██ But it is contended, first, that the indictment being for embezzlement, the accused was not charged with obtaining money by false pretenses, and therefore the charge that the jury might return a verdict convicting him of that crime was illegal; and second that article 407 of the Code of Criminal Procedure is unconstitutional, being violative of section 10 of the Bill of Rights (Const. 1921), which provides that:

"In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him."

And section 41, art. 7, of the Constitution 1921, which provides that:

"Cases, in which the punishment may be at hard labor, shall be tried by a jury of five, all of whom must concur to render a verdict; cases, in which the punishment is necessarily at hard labor, by a jury of twelve, nine of whom must concur to render a verdict."

As to the first objection, it is sufficient to say that the Code of Criminal Procedure, in article 407, expressly states that, in an indictment for embezzlement, a verdict convicting the accused of obtaining by false pretenses is responsive, which is equivalent to saying that the charge of embezzlement includes the lesser crime of obtaining by false pretenses. These crimes are of the same generic class, in that each relates to the same ultimate, unlawful purpose or design, that of fraudulently depriving another of his property. Under the Revised Statutes, embezzlement is made the greater crime, and as the two are kindred, related offenses, the greater includes the lesser. This is true in fact and in law, as expressly declared by the Code. Therefore, the contention that this defendant was not charged with the crime of obtaining by false pretenses is without foundation.

As to defendant's objection, that he was not informed of the nature and cause of the accusation against him, a right guaranteed by the Bill of Rights, it suffices to say that he was indicted for the crime of embezzlement, which, under the law, includes the lesser crime of obtaining by false pretenses. He was charged with knowledge of the law, and, therefore, knew when he was confronted with the greater crime, that he was at the same time charged with the lesser. Therefore, if he was not prepared to meet the charge on which he was convicted, he has only himself to blame.

The same point was raised and disposed of adversely to defendant's contentions in the case of State v. Williams, 40 La. Ann. 732, 5 So. 16. There the accused was indicted for larceny, tried on that charge, and convicted of embezzlement. The defendant contended that he was taken by surprise "as he was not informed of the nature of the charge against him in the indictment." The court sustained the verdict under section 1056 of the Revised Statutes, which provides that one charged with larceny may be convicted of embezzlement. The court said:

"The defendant was not taken by surprise; because he was bound to know the law, which informed him that on an indictment for larceny, if the facts proved warranted it, he could be found guilty of embezzlement."

See also State v. Poland, 33 La. Ann. 1161.

Defendant's most serious complaint is that article 407 of the Code of Criminal Procedure is unconstitutional, and therefore the court's charge, though couched in the language of that article, was unlawful. The basis of this contention is that said article of the Code permits the conviction of a person of a crime not necessarily punishable at hard labor by a jury of twelve, while under the Constitution, section 41, art. 7, all such cases "shall be tried by a jury of five."

Article 407 of the Code of Criminal Procedure is not open to the attack made upon it. It mentions only the crimes of larceny, embezzlement, obtaining by false pretenses, and swindling. These are all kindred, related offenses of the same generic class. As we have already stated, embezzlement, which is the greater crime, includes the others, which are of lesser grade. Under Revised Statutes, § 905, as amended by Act No. 165 of 1918, the embezzlement of an amount exceeding $100 is a felony, a case "in which the punishment is necessarily at hard labor," and is therefore triable by a jury of twelve. But under the Code, where an accused is being tried for

embezzlement by a jury of twelve, that jury may render a verdict convicting him of larceny, obtaining by false pretenses, or swindling, even though these are cases triable by a jury of five, if charged independently and alone in a bill. That provision of the Code is not objectionable for the reason that the greater crime of embezzlement includes those of a lesser grade mentioned, all being kindred and related crimes of the same generic class. In all such cases, the jurisdiction of the jury is determined by the nature or gravity of the crime charged, and not by the verdict which may be rendered.

■ That a jury of twelve may find an accused person not guilty of the crime charged, but convict him of a less serious one, provided the elements of the less serious crime are included in the definition of the one charged, even though the jury would not have jurisdiction to try the case if the defendant were accused only of the crime of lesser grade, is settled beyond controversy. 14 R. C. L. 210, § 53; 31 C. J. 854, § 482; State v. Malloy, 30 La. Ann. 61; State v. Desselles et al., 150 La. 494, 90 So. 773; State v. O'Banion, 171 La. 323, 131 So. 34; State v. Flattmann, ante, p. 620, 135 So. 3.

■ (3) The jury returned a written verdict in the following words: "Guilty of feloniously obtaining money under false pretenses." At the request of counsel for defendant, the jury was polled and each said that was his verdict. Whereupon, the trial judge, in open court in the presence of the jury, asked the jurors if they intended to bring in a verdict of "feloniously obtaining money by false pretenses," and the foreman of the jury answered, "Yes." The judge then asked the foreman to change the word "under" to the word "by," which he did. The verdict, as changed or corrected, was then

read to the jury and they were asked if it was their verdict, and the foreman answered that it was, and the verdict was recorded. Counsel for defendant objected to the change in the verdict, and reserved this bill.

There is no merit in the bill. The intention of the jury was obvious. This court has on at least two occasions used the word "under" instead of "by" in referring to the crime denounced by section 813, of the Revised Statutes. In State v. Lewis, 41 La. Ann. 590, 6 So. 536, 538, the organ of the court speaks of the crime of "obtaining goods under false pretenses." Again in the case of State v. Hainey, 142 La. 407, 76 So. 818, the court said, "Defendant was convicted of the offense of obtaining property under false pretenses, as denounced in section 813, R. S." The words "under" and "by" when used with reference to this crime convey the same idea; mean the same thing. The verdict returned on which the jurors were polled was therefore in proper form, and needed no correction. It was not necessary that a verdict be written in the exact language of the statutes. It is valid if words of similar import are used, and the meaning and intent of the jury is clear. The trial judge, after ascertaining that the jury intended to convict the accused of obtaining by false pretenses, ordered the verdict changed by substituting the word "by" for the word "under." This was permissible under the cases of State v. Hightower, 136 La. 310, 67 So. 13, and State v. Davis, 162 La. 510, 110 So. 733.

If the judge erred in so doing, the error was harmless. The accused suffered no injury therefrom. If the accused entertained any doubt as to whether the corrected verdict expressed the intent of each of the jurors, he should have had them polled. Failure of a defendant to demand the right to have the

jury polled shuts him off from claiming for relief. State v. Atkinson, 104 La. 570, 29 So. 279.

(4) Bill No. 4 was reserved to the ruling of the court in refusing to grant a new trial, and to the overruling of a motion in arrest of judgment. These motions set out the errors complained of in bills (1), (2), and (3), which have been disposed of.

The verdict and judgment appealed from are affirmed.