(No. 23605.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS SCHMIDT, Plaintiff in Error.

*Opinion filed October 14, 1936.*

314

Ditchburne & Lounsbury, (Thomas J. Johnson, Jr., of counsel,) for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and A. B. Dennis, (Edward E. Wilson, John T. Gallagher, Richard H. Devine, and Melvin S. Rembe, of counsel,) for the People.

Mr. Justice Farthing delivered the opinion of the court:

The plaintiff in error, Louis Schmidt, was indicted with his twin brother, Edward, and John LaVelle, also known as John LaBuda. LaVelle and Louis Schmidt were both charged as habitual criminals and all three were charged with armed robbery. In a trial before a jury in the criminal court of Cook county plaintiff in error and LaVelle were convicted as habitual criminals. Motions for a new trial and in arrest of judgment were overruled and they were sentenced to the penitentiary for life. Edward Schmidt was also convicted of the charge of robbery while armed, etc., and was sentenced for from one year to life. Louis

Schmidt alone has sued out this writ of error to review the judgment of conviction.

Plaintiff in error contends that he was not proved guilty beyond a reasonable doubt, and that he was not properly found guilty by the verdict of the jury as an habitual criminal.

On May 4, 1935, at 3846 Broadway, in Chicago, Eli Leipsig conducted a corner drug and liquor store. There was a U-shaped counter in the main room, and there was also a side room at the south. On that afternoon, about 4:45 o'clock, three men entered the store. Ann Prosk, a clerk, spoke to one of the three, whom she identified as Edward Schmidt, and about this time one of the three announced that this was a "hold-up." When the three men entered Leipsig was also back of the counter. He attempted to reach the street but was stopped by the Schmidts, and one of them pointed an automatic pistol at him and ordered him to get back. LaVelle went behind the counter and forced the clerks and customers to go into the side room. He stood guard while the other two robbers emptied the cash registers and took several bottles of liquor from the shelves. When the three robbers left the store Mrs. Leipsig ran out and saw a cab being driven away. One of its occupants fired a shot in her direction. Stephen Ermler, another clerk at the store, Ann Prosk, and Leipsig and his wife identified all three defendants at the trial.

The testimony shows that five days after the robbery, Leipsig, his wife and two employees were at the Summerdale police station at the invitation of the police when Louis and Edward Schmidt entered in the custody of officers. Leipsig remarked at once that the Schmidts were two of the robbers. The two brothers were confronted by Leipsig and the others, and one of the officers remarked, "Here is your man, here."

Leipsig and his wife both testified that in a conversation between the former and the Schmidts he asked, "Now,

after you got your money and everything and you got away why did you want to fire the shot at the group?" Edward Schmidt replied, in the presence of plaintiff in error: "I did not fire the shot. Jimmie fired the shot. We boys did not fire the shot." He admitted having committed the robbery, and that he had just re-enacted the robbery, in the presence of the officers, at the drug and liquor store. Leipsig asked if they had received any of the money, and he testified that Louis and Edward Schmidt told him they had none of the money left and that they got none of the liquor. The witnesses who identified the three men described their clothing in detail. Ermler, the clerk employed by Leipsig, testified that when LaVelle drew his gun and told Ermler to go to the back room, Ermler went there so fast that LaVelle asked him where he was going. This witness said he passed Louis Schmidt on his way to the back room, and that this was the only time he saw Louis during the robbery.

The plaintiff in error contends that since the four witnesses who testified as to his identity had only a short time to observe him their testimony lacks weight. He points out the fact that two of them were present, at the invitation of the police, at the station on May 9 for the purpose of identifying him as one of the robbers, and that two others saw him only on the day they testified at his trial. He says that he was not picked out of a group at the police station or elsewhere, and that our decisions require that method of identification. He relies on our holdings in *People* v. *Sanders,* 357 Ill. 610, *People* v. *Deal,* id. 634, *People* v. *Peck,* 358 id. 642, *People* v. *DeSuno,* 354 id. 387, *People* v. *Martin,* 304 id. 494, *People* v. *Fiorita,* 339 id. 78, and *People* v. *Crane,* 302 id. 217, to support his contention that such an identification as was made by the four witnesses here is lacking in probative force.

Plaintiff in error argues that by the above decisions we have held that where, as here, an alibi was the defense, this court will determine whether the evidence as to identifica-

tion of the defendant is sufficient to overcome the evidence offered in his behalf as to an alibi. However, where the defense is an alibi and the evidence is conflicting, the truthfulness of the witnesses and the weight of their testimony rest primarily with the jury. (*People* v. *Deal,* 361 Ill. 225; *People* v. *Hanisch,* id. 465; *People* v. *Matthews,* 359 id. 171.) The defendant's alibi testimony was badly discredited by his and his brother's apparent admission of their part in the robbery, during the conversation with Leipsig, in the presence of his wife, at the police station. The most that can be said as to the identification is, that the circumstances under which it was made are matters that may properly be taken into consideration by the trial court or jury or the reviewing court, in connection with the other facts and circumstances in evidence, to determine whether the defendant was proved guilty beyond a reasonable doubt. There is no iron-clad requirement that a defendant be picked out of a group in a show-up either at a police station or jail, and there is no rule that makes an identification insufficient which takes place otherwise. The fact that the robbers were not under close scrutiny by the four witnesses for a long period of time, and that they were identified by two of these witnesses for the first time after the robbery, when the witnesses saw them in court, only affects the weight of this testimony. It was the duty of the jury to weigh the evidence, and unless it is manifestly against the weight of the evidence we will not disturb that verdict. Where, as here, there are circumstances creating grave doubt as to the truth of the alibi testimony and there is no serious defect in the testimony as to identity of the accused, we would not be justified in disturbing the verdict of the jury.

Louis Schmidt contends that the verdict of the jury was rendered void by the following language: "and we further find from the evidence that the defendant under the name of Louis Arsenault has been heretofore convicted of

four charges of robbery." He says that he was therefore improperly convicted as an habitual criminal.

The count of the indictment under which the defendant was found guilty charged that on March 23, 1928, Louis Schmidt, under the name of Louis Arsenault, had entered a plea of guilty and on that plea had been convicted and sentenced for the robbery of one William M. Munson, under indictment No. 46068. During the trial plaintiff in error stipulated that on March 23, 1928, he, Louis Schmidt, otherwise known as Louis Arsenault, entered a plea of guilty to indictment file Nos. 46068, 46277, 46278 and 46279, charging robbery, and that he was sentenced to the Pontiac reformatory on each of the charges. In *People* v. *McCurrie,* 337 Ill. 290, 297, we held that verdicts are not to be as strictly construed as pleadings and that the records may be searched to determine their sufficiency. All reasonable grounds will be indulged in support of a verdict. In the case before us the indictment referred to the file number of the earlier indictment for robbery as No. 46068, which is one of the four numbers mentioned in the stipulation, in which he admitted he had been found guilty and sentenced to Pontiac for the four robberies. The verdict contains a finding that he had previously been convicted, under the name of Louis Arsenault, of four charges of robbery. This would include indictment No. 46068, for the reason that it and three other robberies were the only four mentioned in the evidence. He stipulated that he had been sentenced for all four. The defendant's contention that he was not properly convicted as an habitual criminal must be overruled.

For the reasons indicated, the judgment of the criminal court of Cook county is affirmed. *Judgment affirmed.*