45 So.2d 604

## STATE v. BROADNAX.

No. 39697.

Feb. 13, 1950.

Rehearing Denied March 20, 1950.

G. Wray Gill and Eugene Stanley, New Orleans, for defendant-appellant.

Bolivar E. Kemp, Jr., Atty. General, M. E. Culligan, Asst. Atty. General, Herve Racivitch, District Atty., Robert E. Le-Corgne, Jr., Asst. District Atty., New Orleans, for appellee.

HAWTHORNE, Justice.

It was charged in a bill of information that the defendant, Joseph Broadnax, "did wilfully and unlawfully possess and have under his control, a narcotic drug, to wit: six (6) capsules of heroin, a compound derivative, mixture and preparation, con-taining opium", which crime is denounced by Section 2 of Act No. 14 of the Second Extra Session of 1934, as amended by Section 2 of Act No. 416 of 1948, the Uniform Narcotic Drug Act. The defendant was placed on trial before a jury, which in due course returned the following verdict: "New Orleans, La., May 31, 1949. Guilty of Attempted Possession.

"(sgd) Alex. S. Allain, Foreman"
Following this conviction the defendant was sentenced to serve a term of two and one-half years at hard labor in the state penitentiary. From this conviction and sentence he has appealed.

The section of the act which defendant is charged with violating reads as follows: "It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, or to be or become an addict as defined in subsection 21 of Section 1 of this Act, except as provided in this Act."

The exceptions apply to physicians, veterinarians, dentists, and other persons named therein who may lawfully manufacture, possess, or sell narcotics under the terms and provisions as set forth in the act itself. The accused makes no defense that he comes within any of the exceptions set forth in the act, and it is well settled that an information or indictment does not have to allege that an accused does not come within the exceptions, for Article 228 of the Code of Criminal Proce-

dure provides that it is no objection to an indictment that it does not aver that the accused was not embraced within the terms of the proviso of the statute creating the offense; that what comes by way of proviso or exception in a statute must be urged by way of defense. Moreover, the act itself provides in Section 18 that in any indictment or proceeding brought under its provisions it shall not be necessary to negative any exceptions contained in the act, and that the burden of proof of any such exception shall be upon the defendant.

Defendant contends that the verdict returned by the jury is a legal nullity on its face and plainly shows that the jury rendered a meaningless verdict when it found the defendant "Guilty of Attempted Possession", as there is no such crime known to the laws of this state.

Under the provisions of the Code of Criminal Procedure of this state, a verdict of a jury may be delivered orally or in writing. See Arts. 400, 401, La.Code Cr.Proc. Article 402 provides that, if the verdict is incorrect in form or not responsive to the indictment, the judge shall refuse to receive it and shall remand the jury with oral instructions as to what verdicts are permissible and as to proper form. Article 405 provides that the verdict must be responsive to the indictment, that is to say, that no one can be found guilty of an offense not charged in the indictment or not necessarily included in the offense charged,

and that no verdict can be of any effect if found upon an indictment so defective as to charge no crime.

The bill of information charging the defendant with possession of narcotics in this case has numerous endorsements thereon, among these being the verdict heretofore quoted.

There are certain well recognized rules of construction to be used in determining whether a verdict returned by a jury is so obscure, uncertain, and meaningless as to be invalid.

Bishop, in Bishop's New Criminal Procedure (4th ed. 1895) sec. 1005a, p. 636, states the following as a guide for interpreting verdicts: "The language of the verdict, being that of 'lay people', need not follow the strict rules of pleading, or be otherwise technical. Whatever conveys the idea to the common understanding will suffice. And all fair intendments will be made to support it. * * *"

In 53 Am.Jur., "Trial", sec. 1036, p. 716, we find the following: "Because inartificial expressions and words are sometimes employed in framing a verdict, the first object in the construction of a verdict is to *learn the intent of the jury,* and when this can be ascertained, such effect should be given to the verdict, consistent with legal principles and construing it as a whole, as will most nearly conform to the intent. The jury's intent is to be arrived at by regarding the verdict liberally, with

all reasonable intendments in its support and with the sole view of ascertaining the meaning of the jury, and not under the technical rules of construction which are applicable to pleadings. In the interpretation of an ambiguous verdict, the court may make use of anything in the proceedings that serves to show with certainty what the jury intended, and for this purpose, reference may be had, for example, *to the pleadings,* the evidence, the admissions of the parties, the instructions, or the forms of verdict submitted." (All italics ours.)

The same work continues in sec. 1050, p. 727: "* * * every reasonable construction should be adopted for the purpose of working the verdict into form so as to make it serve. Further, if, by reference to the record, any uncertainty in the verdict can be explained, it is sufficient to sustain the appropriate judgment."

The rule is stated in 23 C.J.S., Criminal Law, § 1398, page 1077, in the following language:

"The verdict should be expressed in plain and intelligible words, so that its meaning may be understood readily by the court in giving judgment thereon. The verdict should be sufficiently definite, certain, and specific to identify the crime. Where the verdict is so indefinite and uncertain as to be unintelligible, it is invalid.

"However, a strict adherence to the statutory form of verdict usually is not required; and although the verdict is informal or contains inaccuracies in the language used, if the *intention of the jury* to return a verdict of guilty or not guilty of the offense charged may be understood readily, it is sufficient; any words which convey beyond a reasonable doubt the meaning and intention of the jury are sufficient.

"A verdict will not be void for uncertainty if its meaning can be determined by reference to the record, as *by reference to the indictment or information,* or to the evidence and charge of the court."

And, further, in § 1409, p. 1107, it is stated:

"In construing a verdict the *object* is to arrive at the intention of the jury, and when this can be ascertained, if it is consistent with legal principles, such effect should be given to their finding as will conform to the intent.

"In arriving at the intention of the jury the verdict should receive a liberal rather than a strict construction. The verdict is not to be construed as strictly as a pleading, but is to have a reasonable intendment and construction. It should be construed with reference to the pleadings, and it should be construed with reference to the evidence, instructions, the proceedings at the trial, the forms of verdict submitted, and to the entire record; and if, when so construed, it is definite and clearly expresses the intention of the jury and is otherwise legal, technical objections or

mere inaccuracies of expression will not render it void. If the intention of the jury can be *ascertained with reasonable certainty,* the verdict will be sustained."

The appellate courts of this country have recognized, accepted, and followed these rules, as evidenced by the following decisions: Blackshare v. State, 94 Ark. 548, 128 S.W. 549, 140 Am.St.Rep. 144; Yarborough v. State, 94 Fla. 143, 114 So. 237; Barnhill v. State, Fla., 41 So.2d 329; Arnold v. State, 51 Ga. 144; Warren v. State, 12 Ga.App. 695, 78 S.E. 202; People v. Schmidt, 364 Ill. 313, 4 N.E.2d 382; People v. Bailey, 391 Ill. 149, 62 N.E.2d 796; People v. Jensen, 392 Ill. 72, 64 N.E.2d 1; State v. Doolittle, 153 Kan. 608, 113 P.2d 94; Hunn v. Commonwealth, 143 Ky. 143, 136 S.W. 144; State v. Lovitt, 243 Mo. 510, 147 S.W. 484; State v. Polich, 70 Mont. 523, 226 P. 519; Ex parte Booth, 39 Nev. 183, 154 P. 933, L.R.A. 1916F, 960; State v. Cody, 224 N.C. 470, 31 S.E.2d 445; Fowler v. State, 26 Okl. Cr. 170, 223 P. 206; Smith v. State, 83 Okl.Cr. 392, 177 P.2d 523; State v. Setsor, 61 Or. 90, 119 P. 346; Bray v. State, 140 Tex.Cr.R. 3, 143 S.W.2d 593; Henderson v. Commonwealth, 98 Va. 794, 34 S.E. 881; State v. Domanski, 9 Wash.2d 519, 115 P. 2d 729.

In Blackshare v. State, 94 Ark. 548, 128 S.W. 549, 551, the Supreme Court of Arkansas expressed the rule thus: "In a criminal case the verdict should be construed with reference to *the indictment or*

*information* and the entire record, and, if when so construed it is definite and clearly expresses the manifest intention of the jury and is otherwise legal, mere inaccuracies of expression will not render the verdict void."

The Supreme Court of Illinois in People v. Bailey, 391 Ill. 149, 62 N.E.2d 796, 789, said: "The test in determining the sufficiency of a verdict and the judgment of conviction based thereon is *whether or not the intention of the jury can be ascertained with reasonable certainty.* Verdicts are to be liberally construed and all reasonable intendments indulged in their support. A verdict is not to be held insufficient unless from necessity there is doubt as to its meaning; and in determining the meaning the entire record will be searched and all parts of the record interpreted together. * * *"

We find the following language in State v. Lovitt, 243 Mo. 510, 147 S.W. 484, 487: "In determining the sufficiency of a verdict, *the controlling object is to learn the intent of the jury;* and, if such intent may be ascertained and the verdict made definite and certain by reference to the *pleadings and instructions,* it will be sustained, 'and all reasonable presumptions are indulged to sustain the verdict * * *.'"

In Bray v. State, 140 Tex.Cr.R. 3, 143 S.W.2d 593, 596, the court quoted the following from Texas Jurisprudence as the law applicable to the construction of verdicts in that state:

"*In construing a verdict the main object is to ascertain the intention of the jury.* * * * All reasonable presumptions and intendments are made in order to sustain the verdict; * * *. Indeed it has been said that a verdict should not be set aside unless it is so defective and uncertain that the court cannot know for what offense to pass judgment.

"*The verdict may and should be construed in connection with the indictment or information and the charge of the court,* especially where the intention of the jury would not otherwise be clear. It is said that it must always be presumed that in expressing their findings the jury have reference to the charge of the court, unless they also state something which shows that such was not their intention."

In Henderson v. Commonwealth, 98 Va. 794, 34 S.E. 881, 882, it was stated: "* * * A verdict of a jury in a criminal case must always be read in connection with the indictment, and *if it be certain, upon reading them together, what is the meaning of the verdict, it is sufficiently certain.* * * *"

In Warren v. State, 12 Ga.App. 695, 78 S.E. 202, the syllibi by the court show that the accused was charged with the offense of larceny from the house. The jury returned the verdict: "We, the jury, find the defendant not guilty as charged in the bill of indictment, but guilty of an attempt to commit larceny." The contention apparently was made that the verdict was uncertain because it was impossible to ascertain from it what crime the jury had found the defendant guilty of attempting to commit—whether larceny from the house or simple larceny. The court held: "Verdicts must not be avoided, unless from necessity; and, giving to this verdict a reasonable construction, the jury intended to find the accused guilty of an attempt to commit the crime charged in the accusation, to wit, larceny from the house, and not an attempt to commit simple larceny."

■ It is true that in some cases decided by this court convictions have been reversed due to the phraseology used in the verdict or to incorrect spelling of words therein. In doing so this court used a very strict and highly technical approach in determining the sufficiency of the verdict, and disregarded the rule that the main object or purpose in such case is to determine with reasonable certainty the intention of the jury, and, after so determining, to ascertain whether or not the verdict is responsive to the indictment in that by the verdict the defendant is found guilty of the offense charged in the indictment or of one necessarily included in the offense charged. In some cases, however, this court has recognized the general rule as set out hereinabove. For instance, in State v. O'Leary, 50 La.Ann. 641, 23 So. 885, 886, this court stated: "* * * The verdicts of juries, as it is put by one of the leading text writers, are framed by laymen; need not be couched in technical form; any words that

convey the idea to the common understanding will be deemed adequate; and all fair intendments will be made to support the verdict. 1 Bishop Criminal Procedure, § 1005. * * *"

And again, in State v. Ritchie, 172 La. 942, 136 So. 11, 15, we said: "* * * It [is] not necessary that a verdict be written in the exact language of the statute. It is valid if words of similar import are used, and the meaning and intent of the jury is clear. * * *"

In all criminal cases the verdict should be expressed in plain and intelligible words, whether returned orally or in writing, so that its meaning may be understood readily by the court in rendering judgment thereon, must be responsive to the indictment, and must operate as a bar to any other prosecution for the same offense. If the verdict is not responsive or is incorrect in form, the trial judge should refuse to receive it and should remand the jury with oral instructions as to what verdicts are permissible and as to proper form. Art. 402, La.Code Cr.Proc. In this state there is no statutory form for a verdict of the jury, although certain verdicts have been made responsive to certain charges. Art. 386, La.Code Cr. Proc., as last amended by Act No. 161 of 1948. In the absence of any such statutory form, what is meant by the words "correct or proper in form" in the articles of the Code of Criminal Procedure is that the language used by the jury in returning the verdict should disclose

the intention of the jury with reasonable certainty; but, if any uncertainty exists in the language actually used, the first object of the appellate court in construing the verdict is to ascertain with reasonable certainty the intention of the jury, which intent may be ascertained or arrived at by reference to the indictment or information and the charge of the court.

The following expression from 53 Am. Jur., "Trial", sec. 1035, p. 716, referring to sufficiency of the form of the verdict, is pertinent here: "In the absence of some express provision of the practice statutes or the governing rules of practice prescribing the form of the general verdict to be returned, there is no hard and fast rule governing such form. The responsibility of returning a true verdict rests with the jury, and it is a matter of accommodation, and not a legal requirement, that the trial judge supply the jury with the proper forms in any given case. *Any words which convey the meaning and intention of the jury are usually deemed to be sufficient.* So long as the verdict manifests the intention and findings of the jury upon the issues submitted to them, it will not be overthrown because of defects of form merely. * * *"

In the instant case defendant is charged in the bill of information with willfully and unlawfully possessing and having under his control a narcotic drug, to-wit, six capsules of heroin, a compound derivative, mixture, and preparation con-

taining opium. The endorsement on this bill of information discloses that the jury found the accused guilty of "Attempted possession". Under these circumstances there is not any doubt that the verdict, as returned, when considered with the information and by reference to it—the charge of the judge is not in the record—, establishes beyond doubt that it was the intention of the jury to find the accused guilty of attempted unlawful possession of a narcotic drug, to-wit, six capsules of heroin, and the verdict was therefore sufficient in form, within the meaning of the rule hereinabove set out and discussed.

Moreover, we are of the opinion that the verdict returned in the instant case is responsive to the charge contained in the bill of information.

Article 27 of the Criminal Code provides:

"Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

    \*     \*     \*     \*     \*     \*

"An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt. \* \* \*"

Article 7 of the Criminal Code states: "A crime is that conduct which is defined as criminal in this Code, or *in other acts of the legislature,* or in the constitution of this state."

The crime charged against the defendant is found in an act of the Legislature other than the Code, Section 2 of Act No. 14 of the Second Extra Session of 1934, as amended by Section 2 of Act No. 416 of 1948, and clearly comes within the terms and provisions of Article 27, the "attempt" article. The 1934 act, as amended, makes it unlawful for any person to possess a narcotic drug, and Article 27 makes it unlawful for any person to attempt such possession. By the provisions of Article 27, an attempt is made a separate but lesser grade of the intended crime, and that this article is broad enough to include the crime charged in this case is evidenced by the penal provisions of Article 27, as follows: "Whoever attempts to commit *any crime* shall be punished as follows \* \* \*." The punishment is then set out where the offense is punishable by death or life imprisonment, etc., and, in Paragraph 3 it is provided: *"In all other cases* he shall be fined or imprisoned, or both, in the same manner as for the offense attempted, but such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both."

This court has previously pointed out that the comments to the various articles of the Criminal Code, printed as footnotes, have legislative sanction, and that it is appropriate and proper to take into consideration these comments in endeavoring to interpret and construe the provisions of the articles found therein. See State v. Davis, 208 La. 954, 977, 23 So.2d 801.

Under Article 27 (the attempt article) we find the following comments:

"Louisiana statutes covered: *Before the adoption of the Criminal Code* Louisiana had no general statute punishing *all attempts* to commit crimes.

\* \* \* \* \* \*

"Scope: The article is in accord with the general common law concept of attempt. An attempt to commit *any crime* is an offense whether the offense attempted be a felony or merely a misdemeanor. \* \* \*"

These comments further support us in our view that Article 27 is broad enough to include attempted possession of a narcotic drug, and that such a verdict is responsive to the charge in the bill of information. Article 27, when read with the comments, clearly shows that it was the intention of the redactors and the Legislature for its provisions to be of a general nature, punishing all attempts to commit any crimes.

Counsel for defendant argue and contend that Article 27 is not applicable in the instant case, for the reason that

Section 17 of the Uniform Narcotic Drug Act, the act under which defendant was prosecuted, makes it an offense to obtain or attempt to obtain a narcotic drug under certain circumstances, and that for this reason it was not the intention of the authors of the Criminal Code that the attempt article of that Code should be applicable to the offense here charged. Section 17 does make it an offense to obtain or attempt to obtain a narcotic drug by fraud, deceit, misrepresentation, or subterfuge, or by forgery, alteration of prescription or any written order, or by the concealing of any material fact, or by the use of a false name or the giving of a false address, etc. It was clearly the intention of the Legislature to denounce the acts set forth in Section 17 as crimes separate and distinct from, and not connected with, the offense denounced in Section 2 of the act dealing with unlawful possession of such drugs. What Section 17 denounces is the obtaining or attempting to obtain a narcotic drug under color of authority or by fraud or deceit. We do not agree that Section 17 shows any intention of the redactors of the Code to exclude Section 2 of the Uniform Narcotic Drug Act from the application of Article 27.

For the reasons assigned, the conviction and sentence are affirmed.

HAMITER, Justice (dissenting).

The verdict returned in the instant case is not, in my opinion, responsive to the charge

contained in the bill of information. The offense of attempted possession of a narcotic drug may be committed only under circumstances (they are not present here) described in Section 17 of the Uniform Narcotic Drug Act. Any other unsuccessful effort to obtain the drug would constitute mere preparation, not an attempt, under the specific recitals of Article 27 of the Louisiana Criminal Code.

I respectfully dissent.