## THE STATE v. HORACE LOVITT, Appellant.

### Division Two, June 1, 1912.

1. **APPEAL: Delay: Dismissal.** Where the appellant in a criminal case was not responsible for a delay of nearly two years after the trial in the filing of the transcript in this court, and the record was filed long before the motion of the Attorney-General to dismiss the appeal was filed, the court will overrule the motion.

2. **SUPPLYING LOST INFORMATION: Difference In Date of Crime: No Exception.** Where the information is lost the court may permit the filing of another, and such other thereafter becomes the charge upon which defendant is to be tried; and thereafter the original information, though found, becomes an abandoned pleading, and any conflict between it and the new one can be preserved for review only by making it a matter of exception; and if no exception were saved, the court will not consider a difference of one day between the two informations as to the date of the commission of the offense.

3. **CROSS-EXAMINATION OF DEFENDANT: Objection Urged at Time: Improper on Other Grounds.** Where the question asked defendant on cross-examination was objected to on the ground that it did not tend to prove his guilt or innocence, the propriety of the question will be considered on that ground on appeal, and not on the ground that it was improper cross-examination of defendant—that is, it will be considered as if

State v. Lovitt.

the witness was not the defendant. The court must be advised of the specific ground of objection, and if a proper objection was not then made it will not avail on appeal that the testimony admitted was open to another valid objection not made at the trial.

4. IMPEACHMENT: Unchastity to Prove Consent: Rebuttal as to Reputation. Where the defendant, in a trial for an assault with intent to rape, introduced evidence tending to prove specific acts of unchastity on the part of the woman, not to impeach her as a witness, but to prove consent and to negative the testimony of an assault by force, it is proper to permit the State in rebuttal to offer testimony to prove her good reputation for virtue and chastity, for the effect of defendant's testimony was impeachment.

5. ATTEMPT TO RAPE: Instruction: Element of Force. In the trial of defendant for an assault with intent to rape, an instruction which requires the jury to find, in order to authorize a conviction, that the defendant, in making the assault upon the woman, intended, in order to accomplish his purpose, to overcome any and all resistance which she might make, sufficiently embraces the element of force.

6. VERDICT: Intent of Jury: Attempt to Rape or Common Assault: Aided by Punishment Assessed. In determining the sufficiency of a verdict the controlling object is to learn the intent of the jury, and the ascertainment of that intent may be aided by the instructions given and the punishment assessed. Where the court instructed the jury upon the felony of assault with intent to rape and also on the misdemeanor of common assault, the fact that the jury found the defendant guilty of the felony may be ascertained from the verdict finding him guilty and assessing "his punishment at two years imprisonment in the penitentiary," since the law authorizes no such punishment for common assault.

7. CONFLICT OF TESTIMONY. It is the province of the jury to weigh the evidence and find the ultimate fact; and if there was substantial evidence to support their verdict, though there were inconsistencies in the conduct and testimony of the prosecutrix, and there was pronounced conflict between the testimony of the State and defendant, it will not be held that the evidence is insufficient to support the verdict.

Appeal from Harrison Circuit Court.—*Hon. G. W. Wannamaker,* Judge.

AFFIRMED.

*A. L. Hughes* and *Garland Wilson* for appellant.

(1) The supplied information in this case was sup-

plied without any showing being made that it was a true copy of the original information and therefore it is a nullity. State v. Simpson, 67 Mo. 647; State v. Burks, 132 Mo. 363; State v. McCarver, 194 Mo. 717; State v. Wilson, 200 Mo. 28; Jordan v. Vaughn, 104 Mo. App. 112. Moreover, the original information having been found, the reason for the supplied information ceases and it becomes waste paper. The original information charges the offense to have been committed "on the 19th day of November, 1909," while the court instructed the jury that they should find defendant guilty if they believed that he committed the offense "on the 20th day of November, 1909." Clearly the information does not charge the offense which the court submitted to the jury. (2) The court erred in permitting improper cross examination of the defendant, which was of a highly prejudicial nature, and which did prejudice the jury. State v. Sigenthaler, 121 Mo. App. 510; McKern v. Calvert, 59 Mo. 243; State v. Thomas, 78 Mo. 343; State v. Palmer, 88 Mo. 568; State v. Bulla, 89 Mo. 595; State v. Taylor, 98 Mo. 240; State v. Grant, 144 Mo. 56; State v. Hudspeth, 150 Mo. 31; State v. Hathorn, 166 Mo. 229; State v. Kyle, 177 Mo. 659; State v. Candle, 174 Mo. 388; State v. Spivey, 191 Mo. 87; State v. Trott, 36 Mo. App. 29; State v. Fullerton, 90 Mo. App. 411; Schaefer v. Railroad, 98 Mo. App. 454; R. S. 1909, sec. 5242. (3) The court erred in permitting the State to bolster up the prosecuting witness by proving her general reputation for morality, and for chastity and virtue, to be good when her character had not been attacked. State v. Thomas, 78 Mo. 343; State v. Patrick, 107 Mo. 147. (4) Instruction three, given at the request of the State, is erroneous. State v. Helton, 234 Mo. 564; Kelly's Crim. Law, pp. 359-360; State v. Yocum, 117 Mo. 625; State v. Whitsett, 111 Mo. 202; State v. Platner, 196 Mo. 132. (5) The verdict in itself is not sufficient on which to predicate a judgment. State v. Pierce, 136

Mo. 34; State v. Rowe, 142 Mo. 439; State v. Jones,
168 Mo. 398; State v. DeWitt, 186 Mo. 69; Clark on
Crim. Prac., p. 485. (6) There was no evidence upon
which to predicate an instruction for assault with in-
tent to commit rape. State v. Priestley, 74 Mo. 24;
State v. Owsley, 102 Mo. 678; State v. Scholl, 130 Mo.
396; State v. Hayden, 141 Mo. 311.

*Elliott W. Major,* Attorney-General, and *John M.
Dawson,* Assistant Attorney-General, for the State.

(1) There was ample evidence to take the case
to the jury, and the sufficiency of the evidence, as well
as the conflict in same, must be determined by the jury.
(2) The fifth ground of appellant's motion for new
trial asserts that the court committed error in permit-
ting the State to compel appellant, while testifying, to
testify as to whether he had abandoned a former wife.
There could be no prejudicial error in this. Appellant
took the stand and the jury were entitled to know who
he was, and also his history. The cross-examination
of appellant is not confined to a categorical review of
his examination in chief. State v. Miller, 156 Mo. 76;
State v. Feeley, 194 Mo. 301. (3) It will be presumed,
in the absence of evidence, that the supplied informa-
tion was a copy of the original information. State v.
Walker, 167 Mo. 366; Railroad v. Holliday, 131 Mo.
440; Campbell v. Greer, 197 Mo. 463. A lost indict-
ment, like any other record, may be supplied by the
court of whose record it constitutes a part. State v.
Burks, 132 Mo. 367; State v. Simpson, 64 Mo. 647;
State v. Paul, 87 Mo. App. 47; State v. Smith, 71 Mo.
46; State v. McCarver, 194 Mo. 717. The supplied in-
formation was the charge upon which appellant was
arraigned, entered his plea of not guilty, tried, and up-
on which verdict was rendered, the penalty assessed,
and judgment of sentence pronounced. If any part
of the record or proceedings be lost or stolen, the de-
ficiency may be supplied. R. S. 1909, sec. 5060; 1 Chit-

ty's Crim. Law, 722; Hughes' Crim. Law and Proc.,
sec. 2874, p. 751.

KENNISH, J.—Upon an information charging
him with the crime of assault with intent to rape, ap-
pellant was tried at the January term, 1910, of the
circuit court of Harrison county, found guilty, sen-
tenced to imprisonment in the penitentiary for a term
of two years, and from such sentence and judgment
appealed to this court.

The evidence for the State tended to show the
following facts:

Mattie Miller, the prosecutrix, a married woman
twenty-two years of age, with her husband Joe Miller
and their two children, lived in the town of Andover
in 'Harrison county. The defendant, a married man
twenty-eight years old, lived near Andover, and he
and prosecutrix had been well acquainted for a num-
ber of years. On November 20, 1909, about 6:30 p. m.,
defendant drove into Andover in a two-horse buggy.
He stopped at the Miller home and inquired for the
husband. Being informed by prosecutrix that he had
gone to a store, defendant drove to the store and
asked the husband to go with him to Lamoni, Iowa,
a town about six miles distant. The invitation was
accepted and after Miller had gone to his home and
told his wife where he was going, the two men started
to Lamoni in defendant's buggy. When they were
within about a mile of Lamoni defendant said he
wanted to see some person who lived northeast of
the town and suggested that Miller walk the remainder
of the distance to Lamoni and there wait for him.
Miller then walked on to Lamoni, and the defendant,
after going only a short distance to the north, drove
back to Andover and immediately went to the Miller
home, arriving there about eight o'clock p. m. There
was no one in the house except prosecutrix and her
children. He entered the house without knocking.

Prosecutrix asked where her husband was and defendant answered that he was at Ike Hampton's drunk. Prosecutrix said, "Well, you had better get out of here and bring him home." Defendant said he was going home and went out of the house. Prosecutrix then had her baby in her arms, attempting to rock it to sleep. The other child, then a little more than two years old, was in bed asleep. In a few minutes the baby went to sleep and prosecutrix put it in bed and went out into the yard. Defendant was in the yard and said, "Hello." She recognized his voice and being frightened by finding him still on the premises ran into the house. The defendant followed her and as soon as he was inside the house told her, in language that need not be reproduced, that he had driven all the way from Lamoni for the purpose of having intercourse with her and that he would accomplish his purpose or kill her. She replied that he would do nothing of the kind. Thereupon he threw his arms about her and dragged her into the kitchen. She demanded repeatedly that he release her but he paid no heed to her demands. In the struggle that took place while he was dragging her into the kitchen she fought and resisted him in every way she could, by kicking him, scratching him and pulling his hair. Part of the time she was screaming. After a short struggle in the kitchen she freed herself and ran back to the front room with the defendant following her. There were only two rooms in the house and the children were in bed in the front room. They had been wakened by the noise of the struggle and were crying. The oldest one was trying to climb out of bed and get to its mother. Prosecutrix then threatened to shoot defendant unless he left the house and told him she would tell her husband what he had done. He said: "You better not. Joe will leave you, and if he don't leave you we will get in a fight and I will kill him." Defendant then left the house, and as he was leaving

he paused in the door and said: "If it wasn't for
those two children yelling like that I would show you
what I could do to you." He then drove back to
Lamoni, found Miller there waiting for him, and to-
gether they returned to Andover.

The defendant introduced evidence tending to
show the following facts:

Defendant and prosecutrix, before either was
married, lived on adjoining farms. Improper rela-
tions existed between them then and such relations
continued after both were married. On the evening
in question the defendant stopped at the Miller house
the first time to arrange a meeting with prosecutrix
that evening, and was told by her that such a meeting
would be agreeable if he could get her husband out of
the way. He asked the husband to go to Lamoni with
him, took him to a point near that town, promised
to meet him in Lamoni later in the evening, and then
drove back to Andover for the purpose of meeting
prosecutrix. When he arrived at the home of prose-
cutrix she said she was afraid they were being watched
and that he had better leave and meet her some other
time. They kissed each other two or three times, but
defendant made no assault upon prosecutrix, and did
not make the statements testified to by her as to his
purpose in coming back from Lamoni and his inten-
tion to carry out such purpose. When it was sug-
gested that they were probably being watched defend-
and left the house, drove back to Lamoni, found Mil-
ler there waiting for him and brought him back home.

The State, in rebuttal, introduced several wit-
nesses who testified that prosecutrix bore a good rep-
utation for virtue and chastity.

The court gave instructions authorizing a con-
viction of assault with intent to rape, or common as-
sault, or an acquittal.

The jury returned the following verdict: "We,
the jury, find the defendant guilty, and assess his

punishment at two years' imprisonment in the penitentiary.''

I. The Attorney-General has filed a motion to dismiss this appeal on the ground that it was not perfected within twelve months from the date of the order allowing the appeal, and we shall give that first consideration.

It appears from the record that the appeal was granted on the 22nd day of January, 1910, and that an order was then made allowing defendant until and during the May term, 1910, to file his bill of exceptions. It is further shown that the time for filing the bill of exceptions was extended from time to time and that the bill was not filed until October 14, 1911. The transcript of the record was filed in the office of the clerk of this court on February 2, 1912. It thus appears that more than two years elapsed between the time of granting the appeal and the time the transcript reached this court. Notwithstanding this inexcusable delay we have concluded to overrule the motion to dismiss the appeal, and for the following reasons. Section 5313, Revised Statutes 1909, authorizes this court, upon the motion of the Attorney-General, to dismiss an appeal for failure to perfect the same within twelve months, ''unless the defendant shall show to the satisfaction of the court good cause for not perfecting his appeal.'' An examination of the record has not satisfied us that the defendant was responsible for the delay in perfecting his appeal, and as the record is now before us and was filed with the clerk of this court long before the filing of the motion to dismiss, we are not disposed to deny appellant a hearing on the merits.

Before passing from this subject it should be observed that many statutes, in accordance with a wise public policy, attest a legislative intent to bring the trial of criminal cases, as well as all litigation, to as

early a termination as is consistent with the orderly administration of justice. To that end the trial court is given power to appoint a temporary stenographer. The circuit clerk, in case of an appeal, is required to make out a transcript of the record and to certify and return the same to the clerk of this court without delay. The appellate court is directed to proceed upon the return of the record "without delay and render judgment on the record before them." In view of these provisions in aid of timely prosecutions of appeals in criminal cases, there is no justification for the delay disclosed by the record in this case.

II. Before the commencement of the trial it was discovered that the papers in the case, including the information, were lost. On application of the prosecuting attorney leave was granted by the court to supply the lost papers, and another information was filed. No objection was made to the filing of said second information, but the defendant was arraigned, tried and convicted thereon. After the trial the original information was found, and because a difference of one day is shown between the two informations as to the date of the commission of the offense it is urged in this court for the first time that error is apparent in the record.

If such action of the court was error it is clear that it does not appear in the record proper, but was matter of exception, and the defendant having failed to object at the time to the ruling of the court, or to the action of the prosecuting attorney in filing a new information, cannot be heard to object on appeal. But we think the court was not in error in allowing the filing of the second information. This is not a case of supplying a copy of a lost indictment, which, as held in the cases cited by appellant, the court may allow, even in the absence of statutory authority. Section 5060, Revised Statutes 1909, expressly provides

that: "If the affidavit or information shall be lost or destroyed, the prosecuting attorney may file another, and the case shall proceed without any delay from that cause." When the second information was filed is was not a mere copy of an original but it became the charge upon which the accused was tried, as in the case of an amended information, and the original information thereupon became as an abandoned pleading and constituted no part of the record of the case. We therefore rule against appellant upon this complaint.

III. It was argued with much zeal by counsel for appellant that the court erred in permitting improper cross-examination of the defendant. Upon this point the record is as follows:

"Q. How many times have you been married? A. Twice.

"Q. You abandoned your first wife?

"The defendant objects for the reason that it does not tend to prove anything toward the guilt or innocence in this case.

"The State claims it affects his credibility.

"By the court: It goes to his credibility as a witness on the stand.

"To the action of the court in overruling said objection the defendant then and there excepted and still excepts.

"Q. You abandoned your first wife, didn't you? A. Yes, sir."

The foregoing excerpts makes it clear that the objection was not made on the ground of improper cross-examination of a defendant, as now insisted upon, but upon the sole ground that the testimony did not tend to prove the guilt or innocence of the defendant. We must therefore consider the objection as it was made to the trial court, and that is as though the witness had not been the defendant on trial.

It is well recognized law that the cross-examination of a witness is not restricted to such matters alone as tend to prove the issues on trial. The rule is: "He may be compelled to answer any such question, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself, except where the answer might expose him to a criminal charge." [State v. Potts, 239 Mo. 403; State v. Long, 201 Mo. 675, and cases cited.]

The question of the prosecuting attorney we think was improper in view of the fact that the witness was the defendant on trial and that it was upon a matter not referred to in his examination in chief. The credibility of a defendant as a witness cannot be attacked in that manner. [State v. Barrington, 198 Mo. 23.] On the other hand, the court must be advised at the time of the specific ground on which the objection is made, and if a proper objection is not then made it will not avail to show on appeal that the testimony admitted was open to another valid objection not made at the trial. [State v. Witherspoon, 231 Mo. l. c. 720, and cases cited.]

In the Barrington case, supra, it was held that an objection to an improper question asked the defendant on cross-examination, on the ground that it was irrelevant and immaterial, was not sufficiently specific, but that the objection that the question was irrelevant, immaterial and not proper cross-examination, was specific enough to direct the court's attention to the fact that the statute limiting the scope of the cross-examination of a defendant was thereby invoked. The objection under review clearly was not based upon the ground of the immunity granted to a defendant by said statute, and it is too late to adopt that ground on appeal to this court.

IV. The defendant introduced evidence tending to prove specific acts of unchastity of the prosecuting witness. In rebuttal, the State, over the defendant's

objection, was permitted to offer testimony tending to prove her good reputation for virtue and chastity, and appellant now complains of the admission of such evidence as error.

Substantially the same question was before this court in the case of State v. Jones, 191 Mo. 653, and it was there held, as stated in the syllabus, that: "Where witnesses have testified as to improper conduct of the prosecutrix in improper and promiscuous association with men at night, and to admissions by her of having sexual intercourse with other men and being pregnant by another man, this is a sufficient assault upon her character to entitle the State to introduce testimony, in rebuttal, as to her good reputation." See also State v. Speritus, 191 Mo. 24; Underhill on Criminal Evidence (2 Ed.), sec. 418.

We do not regard the testimony so offered by the State as being in conflict with the rule of evidence that a party will not be permitted to prove the good reputation of a witness before it has been attacked by his adversary. It is competent to impeach a witness by proving a bad reputation for morality, virtue and chastity. In this case testimony of particular acts of unchastity was admitted, not to impeach the witness, but to prove consent and to negative the testimony of an assault by force, but while such testimony was not admitted for the purpose of impeachment, it would most certainly have that effect if uncontradicted. It was an attack upon her character, and it would be unreasonable to allow an array of witnesses for the defendant to testify to specific acts of lewdness and unchastity of the prosecuting witness, as was done in this case, and not permit the State to meet it by proof of her good reputation for virtue and chastity. We think the testimony was properly admitted.

V. Appellant complains of error in the giving of instruction number 3 at the request of the State.

The particular complaint lodged against it is that in defining the offense charged it leaves out of consideration the element of force. We have considered this complaint and find that said instruction, as well as instruction numbered 6, given at the request of the defendant, required the jury to find, in order to authorize a conviction, that the defendant, in making the assault upon the prosecuting witness, intended, in order to accomplish his purpose, to overcome any and all resistance which she might make. That is all the law requires.

VI. The court instructed the jury upon the felony of assault with intent to rape. An instruction was also given, at the request of the defendant, upon the misdemeanor of common assault. The jury returned the following verdict: "We, the jury, find the defendant guilty, and assess his punishment at two years' imprisonment in the penitentiary."

Complaint is made that the verdict is insufficient in that it does not appear therein of which of the two offenses defined in the instructions the defendant was convicted.

The instructions authorized the assessment of the penalty of imprisonment in the penitentiary only in case of a conviction of the higher offense, and a penalty of a fine or imprisonment in the county jail in case of a conviction of common assault.

In determining the sufficiency of a verdict the controlling object is to learn the intent of the jury, and if such intent may be ascertained and the verdict made definite and certain by reference to the pleadings and instructions it will be sustained, "and all reasonable presumptions are indulged to sustain the verdict and that the jury has found all the facts necessary to support it." [State v. Bohle, 182 Mo. 68; Muller v. St. Louis Hospital, 73 Mo. 242; 22 Ency. Pl. & Pr. 955 et seq.; 29 Am. & Eng. Ency. Law, 1017.]

Under the rule laid down by the foregoing authorities, the verdict leaves no doubt of which offense the defendant was convicted

VII. It is finally contended that the evidence is insufficient to sustain the verdict. It is shown by the record that this was a hotly contested case, in which there was the most pronounced conflict in the testimony of the respective parties. While it is not difficult, as is usual in such cases, to point out inconsistencies in the conduct and testimony of the prosecuting witness, the testimony of the defendant is equally open to attack. If he had long been unduly intimate with the prosecuting witness, as he testified, it is most improbable that being in the house with her after dark and in the absence of her husband he would have thought it necessary to have taken the husband to a town six miles distant in order to have an opportunity to carry out his purpose. The husband was a laboring man. The defendant resided near by, and the elaborate scheme to get the husband away does not lend support to the verity of defendant's testimony as to the former improper relations existing between him and the prosecuting witness. Besides, his admitted perfidy towards the husband, who regarded him as a friend, was not likely to give the jury a high opinion of his veracity. However that may be, it cannot be said that the testimony of the prosecuting witness, if true, did not tend to prove the charge of which the defendant was convicted, and it is the province of the jury, not this court, to weigh the evidence and find the facts. As there was evidence to warrant their finding, the verdict will not be disturbed. We have carefully examined the entire record and having failed to find error the judgment is affirmed. *Ferriss, P. J.*, and *Brown, J.*, concur.