STATE of Missouri, Respondent,

v.

Joseph McCARTHY, alias Joe McCarthy, Appellant.

No. 47731.

Supreme Court of Missouri,

Division No. 1.

June 13, 1960.

Leonard Johnson, St. Joseph, for appellant.

John M. Dalton, Atty. Gen., Richard W. Dahms, Sp. Asst. Atty. Gen., for respondent.

DALTON, Judge.

Defendant was charged and convicted of the offense of stealing certain personal property of a value in excess of $50 in Buchanan County and his punishment was assessed by a jury at two and one-half years in the Department of Corrections of this state. Sections 560.156 and 560.161 RSMo [Laws 1955, p. 507; Laws 1957, p. 374] V.A.M.S. And see 216.208 RSMo [Laws 1957, p. 316] V.A.M.S.; State v. Cox, Mo.Sup., 333 S.W.2d 46, 50.

The State's evidence tended to show that about 10:15 p. m. on the evening of June 4, 1958, two police officers of the City of St. Joseph, while on duty, saw a pick-up truck parked on Cedar Street in that city between Fifth and Sixth Streets and observed that it had no license plates on it; and there was no name on it to identify its owner. No one was in the cab of the truck and there was nothing in the truck bed. They decided to watch the truck and, later, that evening they observed two men enter the truck and drive away. The officers followed and saw the truck driven across a

vacant lot that had been used as a ball park and disappear in the darkness to the east. It went back in the direction of some railroad tracks. The officers could not see the railroad tracks, nor the premises of the General Compressed Steel Corporation from Sixth Street, since there were no street lights back in that area and the truck lights had been turned off. The officers parked some 200 yards away and waited for about twenty-five minutes, until the truck emerged from the darkness and entered Atchison Street and turned west on Atchison to Sixth Street. When the truck stopped at that intersection, the officers observed that the truck was half loaded with scrap metal, motor starters, generators, etc. They asked defendant where he had gotten the metal and he said he had been out in the country "junking" at some little towns up north and had picked it up. He said he had bought some of the scrap metal up there early that evening and the evening before and had picked it up at different places. A man by the name of Painter was driving the truck and claimed to own it. Both defendant and Painter were arrested and taken to the police station and the truck was parked in front of the station. The next morning defendant told Chief of Police Starmer that he and Mr. Painter had first gone over to the lot where the metal was located and had picked out what junk they wanted and had piled it up. They then went back and loaded it on the truck and it was the junk they had on the truck at the time they were arrested. Defendant said he took the metal from the General Compressed Steel Corporation lot in St. Joseph, Buchanan County. There was other evidence as to the particular kind of scrap metal in the truck. The bed of the truck was about half full so that the pile of metal was about 7 to 7½ feet long by 5 to 5½ feet wide and about 18 inches high. Photographs taken on the morning of June 5, 1958, in front of the police station were in evidence, including one showing the contents of the truck bed.

Defendant did not testify and it does not appear from the transcript that defendant made any admissions in the course of the trial, but the opening statement of defendant's counsel is not set out in the transcript, nor is his argument to the jury shown therein. We assume that some admissions were made, since appellant does not question the first paragraph of Instruction No. 7, as follows:

"The Court instructs the jury that in this case it is admitted by the Defendant that on or about June 5, 1958 in Buchanan County, Missouri that he did wilfully and intentionally steal, take and carry away Scrap Metal, Motors, Generators and a Fan, the same being the property of the General Steel Corporation."

In any event the contested issue in the trial of the cause was whether the load of scrap metal in the truck at the time defendant was arrested was worth $51.62, as shown by the State's evidence subsequently reviewed, or was worth only $31.21, as shown by defendant's evidence.

At the close of all the evidence defendant moved for a judgment of acquittal on the ground that "under the proof and the evidence the state has failed to establish a submissible case." Supreme Court Rule 26.10, V.A.M.R.

■ Appellant assigns error on the court's action in overruling defendant's motion for judgment of acquittal tendered at the close of all the evidence. The motion for judgment of acquittal was properly ruled, because it was not limited to the charge stated in the information, but was based on the proposition that the State had failed to establish *a submissible case.* The offense charged in the information included a lesser offense, or rather the same offense with a lesser punishment, if the value of the property was "less than fifty dollars" (Section 560.161 [Laws 1957, p. 374]) and defendant's own evidence and admissions would have made a submissible case on that issue. Under Section 556.230 RSMo 1949,

V.A.M.S., the court or jury trying a case may find the defendant not guilty of the offense charged and find him guilty of any offense, the commission of which is necessarily included in that charged against him. The court subsequently instructed on the question of lesser value, as required under the evidence and Supreme Court Rule 26.02(6). And see State v. King, 365 Mo. 48, 275 S.W.2d 310, 315; State v. Enochs, 339 Mo. 953, 98 S.W.2d 685, 687.

■ Appellant further contends that the verdict of the jury is not supported by competent and substantial evidence. Appellant says that "the evidence of the state purporting to establish the market value of the scrap metal described in the information is so contradictory and inconsistent as to amount to a total failure of proof as to such issue"; and that the evidence of the state, if it has any probative force, "would tend to establish the market value thereof in localities other than St. Joseph, Missouri, where smelting mills were located to which the prosecuting witness shipped such materials."

The State called Sol Stine as a witness. His testimony tended to show that he had engaged in the business of buying and selling scrap iron and metal since 1931 and had been in St. Joseph with the General Compressed Steel Corporation since 1949 and was its president and general manager. He inspected the property in question at the police station on the morning of June 5, 1958, and recognized various pieces of this property as having been in the yard of his company at 10th and Garfield in St. Joseph. He could tell it was the property of his company by visible inspection, looking at it, and, after examination, he knew the property belonged to his company. The property consisted of 36 assorted electric motors, 19 starters and generators, one fan complete with a 14 inch brass blade, also a heavy drive chain, a plow, two heavy rings 15 inches in diameter and four inches thick, a cultivator wheel and other farm and industrial material classified as "prepared steel." The items were segregated and prepared in the yard of his company located across the railroad tracks east of the old ball park. The total weight of all items was 2260 pounds, and its total market value was $51.62. The heavy steel weighed 930 lbs. and its market value f. o. b. St. Joseph, Missouri, on June 5, 1958, was $25.-20 per ton, or $11.72. The remaining property, weighing 1330 lbs. and consisting of motors, starters and generators, etc. had a market value of $60 per ton f. o. b. St. Joseph, Missouri, on June 5, 1958, or $39.90.

Louis G. Becker, Assistant Manager of the Missouri Iron and Metal Company, Inc., who had been with that company in St. Joseph since 1950, examined the property in question and fixed its market value in St. Joseph, Missouri, on June 5, 1958, at the same figures given by witness Stine.

Appellant's contentions, as hereinbefore stated, are based upon certain facts developed by detailed and extended cross-examination of witnesses as to customs of the trade and upon certain remarks made by the witnesses during cross-examination. For example, it is apparent that in the junk business, particularly in the collection and acquisition of junk by dealers in the first instance, much depends on the seller. If the seller is willing to sell at an offered price, he has made a sale and the dealer has made a purchase. Market price is not necessarily controlling at that level. Also, mixed items of different metals, when offered to a dealer, often take the price of the cheapest metal in the lot, but after the property is once acquired by a dealer and the different kinds of metal are segregated and prepared according to some fixed standard of classification, the metal, according to its class, has a fixed market value. In this case, if the material had been processed still further and the different kinds of metal in the motors, starters and generators separated further, a higher total price could be obtained on the market.

The witness said the electric motors, starters and generators were not classified as "scrap iron," but fall in their own category as named.

Appellant also relies on a purchase memorandum marked "prepared steel" which was made on June 24, 1958, by the General Compressed Steel Corporation showing a purchase of prepared steel at 55¢ per hundred—750 lbs. for $4.15, but what the specific property consisted of did not appear and one witness said there were 31 subclasses of "prepared steel." Appellant also refers to certain statements to the effect that $51.62 was the lowest price the witness and others in St. Joseph "would have sold" the property in question for on June 5, 1958, and to certain references by the witnesses as to what the property was worth "to me," in view of market value at the time, as where the witness on cross-examination said: "I mean that is the price I could sell it at on the open market to a steel mill. * * * That is the market value f. o. b. St Joseph to me. * * * I am basing that on what I can get for it, my price. That is what it is worth to me." All of the matters relied upon in this respect which arose during cross-examination were for the jury in determining the credibility, weight and value of the direct testimony of the witnesses concerning the market value of the property in question on June 5, 1958, at St. Joseph, Missouri. Appellant's entire printed argument is devoted to the question of market value of the property in question and he insists that the testimony on this issue "by no means attains the standard of credibility and probative value contemplated by the law." In determining the sufficiency of the evidence on this issue we may also look to defendant's evidence. Defendant's witness Morton Capps, in substantial agreement with witnesses Stine and Becker, stated that the market value of the scrap iron on June 5, 1958, would have been $26 per ton or $1.27 or $1.28 per hundred and 930 lbs. of it, which he would class as No. 1 prepared steel, would have been worth $12.13. Mr.

Capps also testified that, as to the generators, starters and motors which he inspected, there were ten starters and generators and about 8 motors weighing 360 lbs. that on June 5, 1958, had a market value of 3¢ per pound, or $10.80, and 970 lbs. of "sealed motors" having a market value of 1¢ per pound or a value of $9.70. In his opinion the merchandise stolen had a total value of $31.21 on June 5, 1958.

It is apparent that the market value of the different classifications of scrap metal at St. Joseph was not the issue in dispute between the witnesses. The question was whether the remaining "sealed unit motors" weighing 970 lbs. had "practically no value as junk" and were worth 1¢ per pound, or should be classified along with the other motors, starters and generators and were worth 3¢ per pound. The dispute was as to what classification applied. The credibility, weight and value of the oral testimony on this issue was for the jury. The State's evidence, as to the market value of the stolen property and that it was worth $51.62 on the market at St. Joseph on June 5, 1958, was substantial and sufficient to support the verdict of the jury. State v. Brewer, Mo.Sup., 286 S.W.2d 782; State v. Stegall, 360 Mo. 31, 226 S.W.2d 720, 722; State v. Holtzclaw, Mo.Sup., 258 S.W.2d 666. In the cases relied upon by appellant such as State v. Jenkins, Mo.Sup., 246 S.W. 911; State v. Barbour, 347 Mo. 1033, 151 S.W.2d 1105 and State v. Krieger, 68 Mo. 98, there was no evidence as to the value of the goods stolen.

■ Appellant further contends that the court prejudicially misled and misdirected the jury by giving erroneous oral definitions of the term "reasonable market value" during the hearing of evidence. The matters referred to in the assignment were not mentioned in the motion for new trial, nor were timely objections made in the course of the trial. In any event no error appears. The assignment is overruled.

Appellant complains that the court erred in giving Instruction No. 7, because it did not "present to the jury for its guidance in determining the value of the scrap metal the mandatory rule as to market value." The first paragraph of this instruction, as to which no complaint is made, has been set out. It advised the jury as to defendant's admissions. Appellant complains only of the other two paragraphs and insists that the defects were not cured by Instruction No. 6 given at defendant's request. Instruction No. 6 and that part of Instruction No. 7 which is complained of are, as follows:

"The Court instructs the jury that market value of property such as that described in the information in this case is established by the dealings of persons who are willing to, but do not have to, sell such property and by persons who are willing to, but do not have to, buy, the same. You are, accordingly, instructed that the term 'market value' as applied to the scrap metal alleged to have been stolen by the defendant in this case does not necessarily mean the value thereof to the owner of such property, but rather the value said property would command in the open market in Buchanan County, Missouri, on June 5, 1958.

"Instruction No. 7

\*  \*  \*  \*  \*  \*

"The Court further instructs the jury that if you find and believe from the evidence, beyond a reasonable doubt, that the Scrap Metal, Motors, Generators and Fan as shown in evidence to be of the value in excess of $50.00 lawful money of these United States, you will assess the Defendant's punishment at imprisonment in the Missouri Department of Corrections for a term of not more than 10 years, nor less than 2 years, or by imprisonment in the County Jail for not more than one year, or by a fine of not more than $1000.00, or by both such fine and imprisonment.

"The Court further instructs the jury that if you find and believe from the evidence, beyond a reasonable doubt, that the Scrap Metal, Motors, Generators and Fan as shown in evidence was of the value of less than $50.00, lawful money of these United States, then you will find the Defendant guilty of stealing less than $50.00 in value and you will assess his punishment by a fine of not more than $1000.00, or by imprisonment in the Buchanan County Jail for not more than one year, or by both such fine and imprisonment."

■ While appellant complains that Instruction No. 7 is erroneous in numerous respects, we are limited to a consideration of assignments made in the motion for new trial which comply with the provisions of Supreme Court Rule 27.20 and "set forth in detail and with particularity \* \* \* the specific grounds or causes therefor." The motion for a new trial complains that Instruction No. 7,

"(a) improperly submitted issues of fact for the consideration of the jury, not alleged in the information.

"(b) failed to set any standard by which the jury could properly determine the value of said scrap metal or otherwise sufficiently inform the jury how such value should be ascertained.

"(c) improperly permitted the jury to place its own interpretation on words purporting to define the offense alleged in the information."

■ The first complaint (a) is insufficient in that the alleged "improperly submitted issues of fact" are not pointed out. The third point (c) is also insufficient in that it does not point out in what respects, how or why, the instruction "improperly permitted the jury to place its own interpretation on the words purporting to define the

offense alleged in the information." These assignments present nothing for review.

■ In support of the second point (b) appellant says that not only does the instruction fail to set a standard by which the jury could properly determine the *value* of the scrap metal, but that it conflicted with the standard stated in Instruction No. 6 and the jury was authorized to make its choice in deciding which instruction to follow. Appellant's theory is that the *method* of determining the value of the property stolen was an essential element of plaintiff's case and had to be included in Instruction No. 7 and could not be cured by other instructions which contain no reference to it.

■ Was Instruction No. 7 prejudicially erroneous in failing to include within its terms a statement informing the jury how such value should be ascertained? It was not. Through-out the trial of the cause the witnesses had been examined and cross-examined concerning the "market value" of the property in question at St. Joseph, Missouri. Instruction No. 6 defined the term "market value" and we find no conflict between that instruction and Instruction No. 7 when read as a single charge to the jury. Instruction No. 6 did not conflict with Instruction No. 7, it merely explained and supplemented Instruction No. 7 by defining and explaining the word "value".

Appellant further contends that by reason of the failure of Instruction No. 7 to include a standard of value for the guidance of the jury in determining the value of the scrap metal, the jury had a roving commission to speculate as to the fundamental issue in the case—the value of the scrap metal admittedly stolen. The contention must be overruled since the term was fully explained and covered by another instruction.

■ Other assignments of error in appellant's brief were not preserved in the motion for a new trial, and may not be considered, except an assignment directed against the verdict. It was unnecessary to so preserve this assignment in the motion for a new trial. The information, verdict, judgment and sentence are parts of the record which it is our duty to examine whether error is assigned thereon or not. Any insufficiency of the verdict is open to question upon this appeal. State v. Perry, Mo.Sup., 233 S.W.2d 717, 719; Supreme Court Rule 28.02.

Appellant says the verdict of the jury is defective, irresponsive, insufficient, illegal and void because it does not refer to the information, nor set forth the elements of the offense described therein. Appellant cites State v. Mitnick, 339 Mo. 127, 96 S. W.2d 43, where the jury neither found the defendant guilty as charged, nor mentioned the offense stated in the information, or any offense.

The verdict (omitting caption and the signature of the foreman) is, as follows:

"We the jury in the above entitled cause find the defendant guilty of stealing and assess his punishment at Two & one Half Years in the Mo Department of Corrections."

■ The rules for determining the validity of a verdict are reviewed in the Perry case, supra, 233 S.W.2d 717, 720. The verdict must be certain, positive, and free from all ambiguity. It must carry on its face a definite and precise meaning, and must show just what the jury intended. An obscurity which renders it at all doubtful will be fatal to it. If, however, the verdict is definite in its finding in that it designates the offense with which the defendant is charged and if it prescribes a punishment authorized by statute, it is sufficient. The verdict of a jury, even in a criminal case, is not to be tested by technical rules of construction. The controlling object is to ascertain the intent of the jury. If this is disclosed, the verdict is good though irregular in form.

In the case of State v. Lovitt, 243 Mo. 510, 147 S.W. 484, 487, the court said:

"In determining the sufficiency of a verdict, the controlling object is to learn the intent of the jury; and, if such intent may be ascertained and the verdict made definite and certain by reference to the pleadings and instructions, it will be sustained, 'and all reasonable presumptions are indulged to sustain the verdict, and that the jury has found all the facts necessary to support it.'"

The information charged that defendant "on or about the 5th day of June, 1958, at the County of Buchanan, State of Missouri, did then and there intentionally and feloniously steal scrap iron, electric motors and Generators of the value in excess of Fifty dollars ($50.00), lawful money of these United States, the property of General Compressed Steel Corporation, * * * contrary to the form of the Statutes in such cases made and provided, and against the peace and dignity of the State." The elements of the offense of "stealing" are stated in Section 560.156 RSMo [Laws 1955, p. 507] V.A.M.S. and the meaning of the word "steal" is set out. Section 560.161 RSMo [Laws 1957, p. 374] V.A.M.S. provides the penalties for the offense designated as "stealing." In this case defendant was charged with the offense of stealing, he admitted his guilt of that offense and the verdict found him guilty of that offense, but his punishment turned on the value of the property stolen and its value was in dispute. His own evidence was in support of lesser value and lesser punishment.

In the instructions the value of the property stolen was submitted to the jury in order to ascertain the punishment. The verdict is responsive to the fact issues submitted in that the punishment is fixed at two and one-half years. No objection of any kind was made at the time the verdict was returned. The offense of "stealing" with which defendant was charged in the information is the offense of which defendant was found guilty. The offense does not have different degrees, but different penalties dependent upon the value or kind of property stolen. The allegation in the information as to the value of the property did not make a different offense from the offense of "stealing" but related only to the punishment. See State v. Zammar, Mo. Sup., 305 S.W.2d 441, 443. The court instructed the jury to fix the punishment in accordance with the way they found the value of the property stolen. The punishment fixed clearly, definitely and certainly shows that the jury determined the fact issue submitted to them. State v. Jacobs, Mo.Sup., 321 S.W.2d 450, 452; State v. Lovitt, supra. Defendant's defense was not based upon innocence, but that the property stolen had a value of $31.21. The matter in controversy affected only the punishment to be imposed. The jury was instructed that if they found the value of the property to be less than $50 to fix the penalty at a fine or jail sentence. They fixed the penalty at 2½ years with the Department of Corrections. This demonstrates a finding in accordance with the charge in the information and against the defense interposed on the only issue in the case. Construed in the light of the record, including the instructions given in the case, the verdict is free of ambiguity and clearly reflects the finding of the jury, to wit, that defendant was guilty, as charged in the information, and that the property stolen had a value of at least $50. The verdict was sufficient and responsive. State v. Jacobs, supra; Section 560.161, supra. The failure to state the place of confinement was immaterial. State v. Moody, Mo.Sup., 312 S.W.2d 816, 818(2).

We have also reviewed the other record matters which we examine irrespective of whether they are properly preserved for review. No errors appear.

The judgment is affirmed.

All concur.