STATE of Missouri, (Plaintiff) Respondent,

v.

Henry MARKS, (Defendant) Appellant.

No. 50250.

Supreme Court of Missouri,

Division No. 1.

March 9, 1964.

Claude T. Wood, Richland, Horace T. Robinson, Waynesville, for appellant.

Thomas F. Eagleton, Atty. Gen., Scott O. Wright, Special Asst. Atty. Gen., Jefferson City, for respondent.

HOLMAN, Judge.

Defendant, Henry Marks, was found guilty of the offense of felonious assault, without malice, and his punishment was fixed at imprisonment in the penitentiary for a term of two years. See § 559.190, RSMo 1959, V.A.M.S. He has appealed from the ensuing judgment.

The issues on this appeal are such that a very brief statement of facts will suffice. Clarence Foster and Margaret Foster, his wife, operated a tavern in Waynesville, Missouri. In October 1961 defendant was in the tavern and threatened Margaret with a knife because she would not sell him beer on credit. He was then ordered to stay out of the tavern. On December 14, 1962, defendant went to the tavern about 7:30 p. m. accompanied by Lonnie Ricker-

son and they sat down at the bar. When Margaret waited on them they ordered two beers and she told Rickerson she would serve him a beer but "wouldn't serve defendant because he wasn't supposed to be in there." Defendant left the establishment and returned about an hour later with a loaded shotgun which he pointed at Margaret's chest. The gun was not on safety and he had his finger on the trigger. About that time defendant stated, "I am getting damned tired of you running me out of here and this will be your last time." Margaret called to her husband and shortly thereafter defendant was overpowered by three customers who were present and his gun was taken from him.

Defendant interposed the defense of insanity. There was evidence to indicate that he had suffered from a nervous condition since his release from the army in 1945; that he regularly took tranquilizers and other sedatives prescribed by physicians connected with the Veterans Administration.

Several lay witnesses testified that at times defendant's conversations didn't make sense and that he frequently talked to himself. Two of these witnesses were of the opinion that he did not know the difference between right and wrong at the time of the occurrence heretofore described. Dr. Miller, an M.D. of Waynesville, testified that he had treated defendant for a nervous condition a number of times during the past ten years. While he was of the opinion that defendant was mentally defective, he testified that it was his opinion that defendant knew the difference between right and wrong.

The first point briefed relates to an alleged error in an instruction, but that contention was expressly abandoned at the time of the oral argument and will not be further noticed.

It is defendant's next contention that he should be granted a new trial because the verdict indicates that the jury

did not decide the issue of insanity. The verdict reads as follows: "We, the jury, find the defendant guilty of felonious assault, without malice, and assess his punishment at imprisonment in the state penitentiary two years. We request this man be given mental examination."

After the verdict was received there was a discussion between the court and the jury foreman. Defendant's attorney, Mr. Wood, also asked the foreman some questions. In that colloquy the following occurred: "The Court: Gentlemen, I don't feel like I ought to let you go without mentioning this last sentence you put on here. Of course, I don't know just how we could do that. I suppose the lawyers wouldn't object if I'd discuss just what you had in mind. It might help us to understand your thinking. The Foreman: Well, we just kinda' decided that we would like to have him checked, and if he had a mental ailment, why we wanted him to be doctored and cared for, if he could be, till he was healed. And the way I understand the jury, we wanted that test to be made first, and if there wasn't anything wrong, why we request him to serve his time. * * * Mr. Wood: If I understood you correctly a while ago, the jury would like to—for the man to have a psychiatric examination to determine whether he is sane or insane. The Foreman: That's right. If he isn't, why we want him to serve his sentence. * * * The Court: * * * The penitentiary gives—these officials up there give them these tests and they have psychologists and psychiatrists, and if they find he's mentally incompetent, they transfer him over to the State Hospital for treatment instead of keeping him there. The Foreman: Your Honor, I think that's what we had in mind, that he would receive medical up there and not just be * * * The Court: I'm sure that they do that. They not only see that he has medical attention, which they give all of them, but if he is mentally incompetent to be there, they transfer him over to Fulton where they are prepared to treat him."

In support of his contention defendant has cited State v. McCarthy, Mo.Sup., 336 S.W.2d 411, State v. Thost, Mo.Sup., 328 S.W.2d 36, and State v. Lovitt, 243 Mo. 510, 147 S.W. 484. These cases state general rules relating to the sufficiency of verdicts but do not specifically support the defendant's contention. For example, in Lovitt, it is said that "[i]n determining the sufficiency of a verdict, the controlling object is to learn the intent of the jury; and, if such intent may be ascertained and the verdict made definite and certain by reference to the pleadings and instructions, it will be sustained, 'and all reasonable presumptions are indulged to sustain the verdict, and that the jury has found all the facts necessary to support it.' State v. Bohle, 182 Mo. [58] loc. cit. 68, 81 S.W. 179." 147 S.W. 487.

We have concluded that the part of the verdict in which a mental examination was requested must be disregarded as surplusage. In that connection it should be noted that the jury was instructed that if it found that "defendant's mind was so perverted or deranged that he was not capable of knowing right from wrong, then, if you so find and believe, it will be your duty to find the defendant not guilty on the ground of insanity." The jury found defendant guilty. Therefore, we must conclude that the jury did not find defendant "insane" as that term is defined and explained in the instruction. It is doubtful whether we are authorized to consider the statements of the foreman at all. In a somewhat analogous situation this court said that "in polling the jury, defendant was limited to inquiry touching the fact of the concurrence of the jurors in the verdict as returned. It was not proper to inquire into the reasons actuating the respective jurors in so concurring." State v. Hubbs, 294 Mo. 224, 242 S.W. 675, 677. We have, nevertheless, considered those statements and do not find that they are inconsistent with a verdict of guilty. The issue submitted to the jury related to defendant's sanity on December 14, 1962. It is apparent that the jury was

concerned with his condition on the date of trial, i. e., April 2, 1963. Moreover, it appears that the jurors did not want defendant confined in the penitentiary if he had a "mental ailment" but wanted him to receive treatment. The fact that the jurors may have suspected that defendant was suffering from a "mental ailment" did not indicate that they thought he was insane in the sense that he did not know right from wrong.

We have said that "any recommendation of a jury, unless authorized by statute, is treated as mere surplusage." State v. Burton, 355 Mo. 792, 198 S.W.2d 19, 23. See also State v. Wood, 355 Mo. 1008, 199 S.W.2d 396, and State v. Churchill, Mo. Sup., 299 S.W.2d 475. When the portion of the verdict relating to the mental examination is disregarded the remainder is clear and not subject to criticism. We accordingly rule that the verdict was not prejudicially erroneous. While we fully understand and appreciate the desire of the learned trial judge to ascertain what the jurors had in their minds, we think it would have been the better practice to have instructed the jury to return to the jury room for further deliberations and to return a verdict in proper form, in accordance with the instructions, as was done in the case of State v. Wood, supra.

The remaining contention of defendant is that he did not receive a fair and impartial trial because the foreman of the jury, Jim Doyle, was biased and prejudiced against him. In support of that assignment defendant attached to his motion for new trial his affidavit in which he stated that "the said Jim Doyle is a son of Claude Doyle; that the affiant and the said Claude Doyle and the families of each lived on adjoining farms during the early life of affiant; that there were violent disagreements and conflict between the families of affiant and of said Claude Doyle of whose family the said Jim Doyle was a member; that affiant has reason to believe and does believe that the said Jim Doyle has and had at

the time of this trial a high degree of dislike of the affiant and affiant has reason to believe and does believe that the said Jim Doyle did not and could not have acted fairly and impartially in consideration of the charge against affiant and in the trial of which said Jim Doyle served as juror and foreman thereof. Affiant states that in the voir dire examination of the jury panel prior to selection of the jury to try the charge against affiant the said Jim Doyle failed to disclose the facts relating to his parenthood and his adverse feeling towards the affiant and his family or to give any indication that he had known the affiant and affiant states that he did not recognize the said Jim Doyle as a member of the family of Claude Doyle * * *."

The foregoing affidavit is wholly insufficient to warrant the granting of a new trial. There is no fact alleged which would show that Doyle was prejudiced against defendant. The fact that there had been some ancient conflict between the Doyle and Marks families would not necessarily indicate that this particular member of the Doyle family was prejudiced against defendant. There is no specific contention that the juror did not truthfully answer all questions propounded to him on the voir dire examination. Defendant did not challenge this juror for cause, and failed to question him concerning the matters disclosed in the affidavit. He seeks to excuse his failure to examine the juror in regard to those matters by saying that he did not recognize him as a member of the family of Claude Doyle. If the difficulties between these families occurred so long ago that defendant failed to recognize Jim Doyle it is reasonable to assume that Doyle did not recognize defendant. At least there is no showing that he knew defendant and realized that he was a member of the family with whom his family had formerly had difficulties. The conclusions stated in the affidavit, based only upon defendant's belief, are not sufficient to warrant the relief sought. We are also mindful of the fact that the trial court was in a better position to determine the merits of this contention than is this court. Since the trial court overruled the motion for new trial it is evident that it concluded that defendant was not entitled to a new trial because of the presence of Jim Doyle on the jury. We not only defer to the ruling of the trial court, but have independently arrived at the same conclusion. This point is ruled adversely to defendant.

An examination of the record as required by S.C. Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All concur.