625 So.2d 325 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
Jacky DUKE, Defendant-Appellant.
CR93-123.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1993.
Writ Denied December 20, 1993.
*327 Greg Murphy, for State.
William Jackson Perkins, for Jacky Duke.
Before DOMENGEAUX, C.J., and SAUNDERS and WOODARD, JJ.
SAUNDERS, Judge.
Jacky Duke, defendant herein, was charged with aggravated oral sexual battery, a violation of LSA-R.S. 14:43.4. After trial, a unanimous jury found Duke guilty. Defendant was sentenced to ten (10) years at hard labor and now appeals his conviction and sentence.

FACTS
Duke was charged with the aggravated oral sexual battery of his stepson, A.M., for placing his penis in the child's mouth. The incident with which the defendant was charged was alleged to have occurred on or about September 15, 1989, when A.M. was approximately eight years old. At that time, the child lived with his mother and the defendant near Jena, Louisiana.

ERRORS PATENT
We first consider an error patent which we have discovered in the verdict sheet. "Since the verdict is part of the pleadings and proceedings, any error therein is reviewable under LSA-C.Cr.P. art. 920(2)." State v. Vincent, 387 So.2d 1097, 1099 (La.1980).
Duke was charged with aggravated oral sexual battery. The bill of information, opening statements, closing statements and the jury charges properly listed this as the crime charged and gave the appropriate responsive verdicts. The elements of aggravated oral sexual battery and of each of the responsive verdicts were also explained.
Inadvertently, the verdict sheet, although listing the appropriate responsive verdicts, listed the crime charged as "indecent behavior with a juvenile." The verdict, read aloud by the minute clerk, reflected what appeared on the verdict sheet. Following the verdict, the jury was individually polled and each juror responded that the verdict, as read, correctly reflected their verdict. The verdict was unanimous and no objections were raised to the verdict.
Due to the incorrect listing of the crime charged on the verdict sheet, we must determine whether a valid verdict was returned by the jury. Although Duke was not charged with "indecent behavior with a juvenile" and this language was included in error on the verdict sheet, as stated by the Louisiana Supreme Court in State v. Vincent, supra, at page 1100:
"Nevertheless, there is no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury. La.Code Crim.P. art. 810; see State v. White, supra [315 So.2d 301 (1975) ]. In determining the intention of the jury, if ambiguous, reference may be had to the pleadings, the evidence, the admissions of the parties, the instructions, and the forms of the verdict submitted. State ex rel. Miller v. Henderson, 329 So.2d 707 (La.1976); State v. Broadnax, 216 La. 1003, 45 So.2d 604 (1950)."
Based upon the facts of this case, we find that the verdict returned as "guilty" to a count listed as "indecent behavior with a juvenile" is responsive to the crime charged, i.e., aggravated oral sexual battery, insofar as the jury's intent is clear.
In the case at bar, the verdict sheet given the jury incorrectly listed the crime charged as "indecent behavior with a juvenile," as follows:

VERDICT
The following is a list of verdicts responsive to the charge of Indecent Behavior with a Juvenile:
Guilty
Guilty of attempted aggravated oral sexual battery
Guilty of oral sexual battery
Guilty of attempted oral sexual battery
Not Guilty
*328 On a separate sheet, the jury returned the following guilty verdict:
VERDICT:
Guilty 
 /s/ Katherine Johnson
 FOREPERSON
 9/29/92
 DATE
Prior to jury selection, the court stated to the potential jurors, as follows:
"THE COURT: All right Ladies and Gentlemen, what we will begin now is the selection process for the first case that is to be tried this week. The case is entitled State of Louisiana v. Jacky Duke. The case charges a crime of aggravated oral sexual battery which is a violation of Louisiana Revised Statute 14:43.4."
During voir dire, the correct charge of aggravated oral sexual battery was referred to twenty-six (26) times. Additionally, prior to the start of the trial, the judge read the bill of information to the jury charging Duke with aggravated oral sexual battery. He also read the jury LSA-R.S. 14:43.3 and and LSA-R.S. 14:43.4, defining oral sexual battery and aggravated oral sexual battery, respectively.
The crime charged, i.e., aggravated oral sexual battery, was again named a minimum of four (4) times during opening statements. Subsequently, after trial, during closing arguments, the crime charged, aggravated oral sexual battery, was voiced another eight (8) times.
Finally, after closing arguments, the judge instructed the jury on the law. The instructions mentioned the crime charged by name eleven (11) times in addition to instructing the jury as to the responsive verdicts of attempted aggravated oral sexual battery, oral sexual battery, attempted oral sexual battery. After the jury returned with their verdict, the clerk of court read the verdict as follows:
"MR. CLERK: State of Louisiana versus Jacky Duke. Criminal Docket No. 41,464 the following is a list of verdicts responsive to the charge of indecent behavior with a juvenile. Guilty, Guilty of attempted aggravated oral sexual battery, Guilty of oral sexual battery, Guilty of attempted oral sexual battery and Not Guilty. Verdict Guilty."

The jury was then polled without specifically mentioning the crime charged. The verdict was unanimous.
At the sentencing hearing held on November 4, 1992, Duke acknowledged that he was being sentenced for the crime of aggravated oral sexual battery.
Due to the numerous times the crime charged was mentioned by name and explained beginning with voir dire and ending with the close of trial, we find that the jury clearly intended to find Duke guilty of aggravated oral sexual battery.
Similarly, in State ex rel. Miller v. Henderson, 329 So.2d 707 (La.1976), the defendant was charged with escape from the penitentiary and the jury returned a verdict of "guilty of attempted escape" rather than including the words "from the penitentiary" in the responsive verdict. In response to the defendant's contention that the verdict was a nullity, since not responsive to the crime charged, Justice Tate, speaking for the Miller court, stated at pages 709, 710, as follows:
"Here, the bill of information specifically charged the defendant with simple escape from the penitentiary, La.R.S. 14:110.2. In instructing the jury, the trial judge informed the jury that the defendant was accused of violating this specific statute, which he read to the jury, including its penalty.
The trial judge also instructed the jury that it could find one of the following verdicts: guilty, guilty of attempted escape from Louisiana State penitentiary, not guilty. The list of responsive verdicts furnished the jury included only these three possible verdicts.
Under these circumstances, the jury's verdict of "Guilty of Attempted Escape" could have been intended only to mean guilty of attempted violation of the only statute involved in the indictment or the judge's charge, namely, escape from the *329 Louisiana State penitentiary (La.R.S. 14:110.2).
The verdict was thus responsive to the charge, and the sentence imposed was thus within the statutory limits allowable for the violation held proved by the verdict."
Likewise, we find that the jury's intent was clear and that the verdict was responsive to the crime charged. There is no doubt, based upon the numerous references during the trial to the crime of aggravated oral sexual battery, that the verdict clearly conveys the intention of the jury to find Duke guilty as charged.
As stated in the landmark case of State v. Broadnax, 216 La. 1003, 45 So.2d 604 (1950):
"The Supreme Court of Illinois in People v. Bailey, 391 Ill. 149, 62 N.E.2d 796, 789, said: `The test in determining the sufficiency of a verdict and the judgment of conviction based thereon is whether or not the intention of the jury can be ascertained with reasonable certainty. Verdicts are to be liberally construed and all reasonable intendments indulged in their support. A verdict is not to be held insufficient unless from necessity there is doubt as to its meaning; and in determining the meaning the entire record will be searched and all parts of the record interpreted together. * * *'
We find the following language in State v. Lovitt, 243 Mo. 510, 147 S.W. 484, 487: `In determining the sufficiency of a verdict, the controlling object is to learn the intent of the jury; and, if such intent may be ascertained and the verdict made definite and certain by reference to the pleadings and instructions, it will be sustained,' and all reasonable presumptions are indulged to sustain the verdict * * *."
`In Bray v. State, 140 Tex.Cr.R. 3, 143 S.W.2d 593, 596, the court quoted the following from Texas Jurisprudence as the law applicable to the construction of verdicts in that state:

`In construing a verdict the main object is to ascertain the intention of the jury. * * * All reasonable presumptions and intendments are made in order to sustain the verdict; * * *. Indeed it has been said that a verdict should not be set aside unless it is so defective and uncertain that the court cannot know for what offense to pass judgment.

`The verdict may and should be construed in connection with the indictment or information and the charge of the court, especially where the intention of the jury would not otherwise be clear. It is said that it must always be presumed that in expressing their findings the jury have reference to the charge of the court, unless they also state something which shows that such was not their intention.'
In Henderson v. Commonwealth, 98 Va. 794, 34 S.E. 881, 882, it was stated: ` * * * A verdict of a jury in a criminal case must always be read in connection with the indictment, and if it be certain, upon reading them together, what is the meaning of the verdict, it is sufficiently certain. * * *'"
Id., 45 So.2d at 607-608. (Emphasis in original).
Conversely, the facts of this case may be distinguished from the facts in State v. Vincent, supra, wherein the defendant was charged with "receiving stolen things valued at $150.00" and the jury returned a verdict of "guilty of possession of stolen property in the amount of $100.00." The Louisiana Supreme Court found that the verdict was unclear as to the jury's intent to find the defendant guilty as charged. The Vincent court stated, at page 1100:
"In the instant case, we do not consider that the language of the verdict clearly conveys an intention by the jury to find defendant guilty as charged or guilty of a lesser and included grade of the offense. While the bill of information specifically charged defendant with receiving stolen things, the judge did not read the specific statute, as in Miller, or a summary of it to the jury as part of the charge, nor did he furnish the jury with a list of verdicts that were responsive to the charge. Rather, the trial judge simply instructed the jury,
As to the Second Count, there are four possible verdicts: 1, Guilty as charged of Possession of Stolen Property in the amount of $150.00; or 2, Guilty *330 of Possession of Stolen Property in the amount of (value to be placed by the jury); and 3, Guilty of Attempted Possession of Stolen Property in the amount of (amount to be placed by the jury); and 4, Not Guilty[,] and furnished it with a list of those verdicts. There is no indication that the jury was even aware of the elements of the crime charged. We are unable to say that by the use of the term `possession' the jury intended to find defendant guilty of receiving stolen things (the crime charged) or guilty of a lesser and included grade of the offense. Thus, the verdict returned was not responsive to the offense charged. The trial judge erred in receiving it."
Unlike the facts in Vincent, in this case, the trial judge did read the specific statute to the jury as part of the charge and did furnish the jury with a list of appropriate responsive verdicts. Additionally, in Vincent, the jury was charged as to the wrong crime. In the case before us, the jury was well aware of the elements of the crime charged. See also State v. Thibodeaux, 380 So.2d 59 (La.1980) (conviction reversed; list of verdicts and judge's charge was incorrect and jury returned a verdict which was non-responsive). Thus, we do not find this error patent to be reversible error.
We note an additional error patent. LSA-C.Cr.P. art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record reveals that Duke was not informed of this period. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. LSA-C.Cr.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under LSA-C.Cr.P. art. 914 or 922, therefore, prescription is not yet running. The purpose of the notice of LSA-C.Cr.P. art. 930.8(C) is to inform the defendant of the prescriptive period in advance. The district court is hereby directed to inform Duke of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten (10) days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Fontenot, 616 So.2d 1353 (La.App. 3d Cir.1993).

S.Z.'S TESTIMONY
By his first assignment of error, Duke alleges that the trial court erred in denying his motion for a mistrial. The motion was based on the state's reference during its opening statement to the testimony of a witness other than the victim alleging another crime committed by the defendant. In its opening statement, the prosecution remarked, "we will have evidence that the defendant has done this kind of thing with another child." After a bench conference, the motion for mistrial was denied.
LSA-C.Cr.P. art. 775 addresses the grounds for mandatory mistrial and provides for two general instances where granting of a mistrial is mandatory:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
LSA-C.Cr.P. art. 770 applies in this case and provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
The deciding issue is whether or not this evidence of another crime committed against another was properly admissible.
The "other child" referred to above was S.Z., a female minor child who testified at trial. Prior to her testimony, the defendant moved to suppress S.Z.'s testimony. This motion to suppress was denied and defendant additionally assigns this denial of his motion to suppress as error.
*331 Insofar as both assignments turn on whether S.Z.'s testimony was properly admissible, both the assignments as to the motion for mistrial and motion to suppress will be discussed together.
The admissibility of evidence of other crimes is treated under LSA-C.E. art. 404(B)(1):
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
LSA-C.E. art. 404 (effective January 1, 1989) replaced former LSA-C.Cr.P. art. 15:445 and art. 15:446. Comment (k) to LSA-C.E. art. 404 clearly shows that no change in the law was intended relative to other crimes evidence. See also LSA-C.E. art. 1103; State v. Prieur, 277 So.2d 126 (La.1973). Therefore, the test for its admissibility set forth in State v. Talbert, 416 So.2d 97 (La.1982) is still effective. Talbert, citing State v. Hatcher, 372 So.2d 1024 (La.1979), explained the requirements for the admissibility of other crimes evidence under the modus operandi exception, as follows:
"In order to be admissible the extraneous offense evidence must meet several tests: (1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; State v. Prieur, 277 So.2d 126 (La.1973); see also, State v. Gaines, 340 So.2d 1294, 1298 (La.1977) (concurring opinion); McCormick on Evidence, Sec. 190, pp. 451-52 (2d ed. 1972); (2) the modus operandi employed by the defendant in both the charged and the uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; State v. Jackson, 352 So.2d 195 (La.1977); State v. Lee, 340 So.2d 1339, 1345 (La.1977) (concurring opinion); (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. State v. Frederick, 340 So.2d 1353 (La.1976); (4) the other crimes evidence must tend to prove a material fact genuinely at issue; State v. Ledet, 345 So.2d 474 (La.1977); (5) the probative value of the extraneous crimes evidence must out weigh its prejudicial effect. State v. Sutfield, 354 So.2d 1334 (La.1978); State v. Jackson, 352 So.2d 195 (La.1977)." Id. at 1033.
Talbert, 416 So.2d at 99-100; see also State v. Howard, 520 So.2d 1150 (La.App. 3d Cir. 1987), writ denied, 526 So.2d 790 (La.1988) (other crimes evidence limited to evidence of similar crimes).
The witness, S.Z., referred to by the state in its opening statement, was nine years old at the time of trial. She testified that while she was visiting at Duke's house, Duke invited her to taste some new candy. She indicated that Duke had a line of candy set up, sat her on a stool, blindfolded her and instructed her to taste, which she did. She testified that afterwards, Duke asked her if she wanted more, but she said no. When she looked up, she testified that she saw the defendant zipping up his pants. When asked what she thought Duke had put in her mouth, she replied, his penis. She stated that she had not seen it. Although the victim in this case, A.M., was at the house at the time, S.Z. was not sure if he saw what happened. She identified Duke in court.
S.Z.'s unwavering testimony established by clear and convincing evidence the commission of other crimes and the defendant's connection therewith. S.Z.'s testimony that she was four at the time of the incident, established the commission of an oral sexual battery on a child below the age of twelve. This act constituted aggravated oral sexual battery and it also established the peculiar modus operandi employed by Duke in both the charged and uncharged offenses of instructing children to sit down, blindfolding them and placing his penis in their mouths when other adult supervision was absent. Her testimony, *332 together with A.M.'s testimony, established the intent, knowledge and system of the defendant and the fact that Duke's actions were neither accidental nor coincidental. Therefore, the testimony was substantially for purposes other than to show that Duke was a man of criminal character. The probative value of the extraneous crimes evidence outweighed its prejudicial effect. Thus, S.Z.'s testimony meets the Talbert test. S.Z. testified as to a crime which was similar to the crime for which Duke was on trial and thus, meets the Howard test. We find that the trial court properly allowed her to testify and that, insofar as her testimony was properly admissible, the state did not err in referring to it in its opening statement. As such, Duke's motion for mistrial and motion to suppress were properly denied.

TESTIMONY OF A.M. AND TAYLOR
The victim, A.M., and the investigator for the State Office of Community Service, Gloria Taylor, who investigated child neglect and abuse cases, testified about other crimes committed against the victim. Defendant assigns as error the trial court's denial of his motion to suppress this evidence.
On September 28, 1989, Taylor interviewed A.M. after his school principal called the Community Service's Office. This interview constituted A.M.'s first complaint of abuse. A.M. told Taylor that the incidents occurred over a period of time when A.M. had been left alone with Duke as his babysitter. A.M. told Taylor that Duke would call him into the house, sit him down, tell him to cover his eyes, and then Duke would place his penis in A.M.'s mouth. A.M. said that Duke would give him peppermint candy and tea after the incidents.
Additionally, A.M. testified in the courtroom that when his mother was gone, Duke would call him inside, put a towel over his eyes and place his penis in his, A.M.'s, mouth. A.M. identified Duke in the courtroom.
A.M. also testified on videotape. In the videotape he stated his age as eight years old. He stated that the incidents occurred in the living room of the house where he lived with his mother and Duke. A.M. testified that the incidents began occurring when he was in kindergarten, and that they occurred several times a week or almost every time he was left alone with Duke.
The testimony of Taylor and A.M. referred to other crimes committed against A.M. Again, this testimony established by clear and convincing evidence the commission of other crimes and Duke's connection to these crimes. Both A.M.'s and Taylor's testimony referred to the peculiar modus operandi of Duke. Their testimony was relevant for proving Duke's intent, knowledge and system and thus, was not merely an attempt to paint Duke as a man of criminal character, but tended to prove a material fact genuinely at issue. The testimony's probative value outweighed any prejudicial effect and thus, the testimony of A.M. and Taylor met the Talbert test, and the trial court properly allowed them to testify.
Therefore, we find defendant's assignments of error as to the testimony of A.M. and Taylor are without merit and find the trial court correctly denied Duke's motion to suppress.

VIDEOTAPE OF A.M.
By this assignment of error, Duke alleges that the trial court erred when it denied his motion to suppress the videotaped statement of A.M. Duke argued that the taped interview was inadmissible because it was made in violation of LSA-R.S. 15:440.5(A)(4), which states:
The statement was not made in response to questioning calculated to lead the child to make a particular statement.
LSA-R.S. 15:440.1, et seq., addresses the electronic recording of child abuse victims. LSA-R.S. 15:440.3 authorizes the admissibility of a video made in accordance with these articles as an exception to the hearsay rule. LSA-R.S. 15:440.4(A) states the correct method of recording such a videotape; one criteria set forth under LSA-R.S. 15:440.4(A)(3) provides:
That such recording was not made of answers to interrogatories calculated to lead the child to make any particular statement.
*333 Defendant complains that, despite repeated denial by A.M. that Duke had ever ejaculated in his mouth, Dr. Rhea[1] continued to ask leading questions until A.M. finally agreed that the defendant had ejaculated in his mouth. In overruling Duke's motion to suppress, the trial court recognized that Dr. Rhea had used leading questions, but allowed the videotape to be admitted on the grounds that the subject of the elicited responses, Duke's ejaculation, was not an element of the crime of aggravated oral sexual battery.
In State v. Feazell, 486 So.2d 327 (La.App. 3d Cir.), writ denied, 491 So.2d 20 (La.1986), we addressed a similar issue. In Feazell, we acknowledged that ordinarily leading questions to one's own witness are prohibited unless the witness is unwilling or hostile. However, we noted that an exception is made when questioning a young child. We found that "in the absence of palpable abuse," finding reversible error was not warranted. State v. Feazell, supra, 486 So.2d at 330. Additionally, we found that the leading questions in Feazell constituted harmless error in light of the fact that the defense viewed the videotape prior to trial and cross-examined the child during trial. See also State v. Isaac, 544 So.2d 531 (La.App. 5th Cir.1989).
In the present case, Duke viewed the tape prior to trial and cross-examined the child at trial. He filed a motion to suppress the videotape on the second day of trial, which was heard and denied that morning before the trial resumed. His objection was reurged after the tape was viewed by the jury. The questions to which Duke objected as leading, when considered in the context of the video as a whole, were not so prejudicial as to outweigh its probative value. Additionally, the subject matter of the questioning was not an element of the crime with which Duke was charged and convicted. As such, any error in allowing the tape into evidence is harmless and we find this assignment of error without merit.

MOTION FOR DIRECTED VERDICT OF ACQUITTAL
Duke contends that the trial court erred in overruling his motion for a directed verdict of acquittal.
"Directed verdicts upon the state's completion of its case in chief cannot be entered in jury trials, but only in bench trials. C.Cr.P. 778. The correct vehicle for asserting defendant's argument that the state failed to prove an essential element of the crime is the motion for a post verdict judgment of acquittal, C.Cr.P. 821, or the motion for a new trial, C.Cr.P. 851."
State v. Allen, 440 So.2d 1330, 1331 (La. 1983). Insofar as the defendant has no right to move for a directed verdict in a jury trial, we find that this assignment of error is without merit.

EXCESSIVE SENTENCE
Duke next alleges that the sentence imposed by the trial court is unconstitutionally excessive. The trial judge sentenced Duke to ten (10) years at hard labor. Duke immediately objected to the sentence imposed. His objection was denied by the trial court. Thus, Duke sufficiently preserved the issue of his sentence for appeal. See State v. Singleton, 614 So.2d 1242 (La.1993).
The sentence imposed was twice the maximum sentence indicated by the sentencing guidelines, but well within the statutory maximum of twenty (20) years, with or without hard labor, allowed for aggravated oral sexual battery pursuant to LSA-R.S. 14:43.4.
The trial court gave its reasons for departing from the sentencing guidelines, as follows:
"In paragraph 2, one of the aggravating circumstances to be considered is that the offender knew or should have known that the victim of the offense was particularly vulnerable and incapable of resistance due to extreme youth, advanced age, disability or ill health. In this case the victim was an individual who was placed in the care, custody and control of Jacky Wayne Duke. He was obviously a child of very extreme young age, extremely vulnerable to whatever Mr. Duke wished to do to him and Mr. Duke chose to take advantage of that. Under paragraph 4 and the court has covered *334 that that [sic] the offender used his or her position or status to facilitate the commission of the offense and clearly that's what Mr. Duke did in this case. Under paragraph 9 the offense resulted in a significant permanent injury or significant economic loss to the victim or his family. There was no economic loss involved in this outside of the possibility of medical cost but certainly there was a permanent psychological injury not only to this victim but to the other young child who was forced to testify in this case. Under paragraph 12 suggests that the offender was persistently involved in similar offenses as not already considered a criminal history or part of a multiple offender adjudication. The criminal history does not include any notations that would increase the grid schedule as a result of the testimony of the other child that was also a victim of Mr. Duke's activity. Finding those cases, those aggravated circumstances to be applicable in this case the court chooses to step outside the sentencing guidelines and it's the sentence of the court that Mr. Duke serve a period of ten years at hard labor."
For the above reasons, the trial court did not find that this case fit within the sentencing guidelines. As we recently stated in State v. Jack, 614 So.2d 215 (La.App. 3d Cir.1993), writ denied, 619 So.2d 575 (La. 1993), 614 So.2d at page 221:
"The sentencing court is not required to follow the guidelines in imposing sentence but must only state for the record that it considered such.
LSA-C.Cr.P. art. 894.1 provides in part as follows:
A. When the defendant has been convicted of a felony, the court shall consider the sentencing guidelines promulgated by the Louisiana Sentencing Commission in determining the appropriate sentence to be imposed. However, no sentence shall be declared unlawful, inadequate, or excessive solely due to the failure of the court to impose a sentence in conformity with the sentencing guidelines of the commission."
See also LSA-C.Cr.P. art. 881.4(D); LSA-C.Cr.P. art. 881.6; and LSA-R.S. 15:328.
In State v. Jack, 614 So.2d at 221-222, we discussed the wide discretion given the trial judge in imposing sentence, as follows:
"The jurisprudence clearly indicates that to constitute an excessive sentence, this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. See State v. Campbell, 404 So.2d 1205 (La. 1981); State v. Everett, 530 So.2d 615 (La. App. 3d Cir.1988), writ denied 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982)."
In this case, we find that the trial court justifiably deviated from the guidelines due to the aggravating circumstances of the crime charged which warranted the sentence imposed. In light of the fact that the sentence imposed is only half the maximum sentence allowed pursuant to the statute under which Duke was convicted, we do not find that the sentence is excessive or that the trial judge abused his discretion. As such, we find no merit in defendant's contention that his sentence is unconstitutionally excessive.

CONCLUSION
Based upon the foregoing, the conviction and sentence of Jacky Duke, defendant herein, is hereby affirmed.
The district court is directed to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 with reference to the prescriptive period for post-conviction relief by sending appropriate written notice to the defendant within ten (10) days of the rendition of this opinion and to file written proof that the *335 defendant has received said notice in the record of these proceedings.
AFFIRMED WITH INSTRUCTIONS.
NOTES
[1] Dr. Rhea took A.M.'s videotaped deposition pursuant to an order of the trial court.